**UNITED STATES of America, Plaintiff,**

v.

**ACTON CORPORATION, on Behalf of VIKOA, et al., Defendants.**

**Civ. No. 89–3652 (GEB).**

United States District Court,
D. New Jersey.

June 22, 1990.

See also, 733 F.Supp. 869.

Donald G. Frankel, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Michael A. Brown, Schmeltzer, Aptaker & Sheppard, P.C., Washington, D.C., for settling defendants.

Joan W. Appleyard, Mehr & La France, Freehold, N.J., for intervenor Freehold Cartage, Inc.

Robert A. Matthews, McKenna, Connor & Cuneo, Washington, D.C., for intervenors.

## AMENDED OPINION

BROWN, District Judge.

This Amended Opinion [1] resolves two motions for intervention or, in the alternative, consolidation, brought by seventeen defendants in a related action, *United States v. Armstrong World Industries, Inc.*, Civil No. 89–4363 (the "Armstrong defendants").[2] Both this case and the *Armstrong* litigation involve the cleanup of the Lone Pine Landfill site in Freehold Township, New Jersey, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* On August 25, 1989, the Environmental Protection Agency simultaneously filed a complaint against 116 named defendants in this action, and filed with the Court a proposed consent decree. Pursuant to § 122(d)(2) of CERCLA, the United States published notice of the consent decree in the Federal Register on September 8, 1989. *See* 54 Fed.Reg. 37388 (Sept. 8, 1989). The notice announced a thirty-day period in which the United States would accept public comments on the decree. During the comment period, the United States received four sets of comments from non-settling potentially responsible parties ("PRPs"), including the Armstrong defendants.

On October 14, 1989, the United States filed suit against the sixteen Armstrong defendants as well as eight other PRPs who had not signed the consent decree. The United States seeks to recover approximately $3.9 million from these defendants to recover investigatory and design costs, as well as remaining future costs. The Armstrong defendants oppose entry of the *Acton* consent order, and now seek intervention pursuant to Fed.R.Civ.P. 24(a)(2) and § 113(i) OF CERCLA, 42 U.S.C. § 9613(i), or in the alternative permissive intervention under Fed.R.Civ.P. 24(b), or consolidation with the *Armstrong* action pursuant to Fed.R.Civ.P. 42(a).

The Armstrong defendants assert that they may intervene as of right pursuant to both Fed.R.Civ.P. 24(a)(2) and § 113(i) of CERCLA. Fed.R.Civ.P. 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Section 113(i) of CERCLA provides:

> In any action commenced under this chapter ... in a court of the United

---

1. This Court issued its original Memorandum and Order in this matter on January 19, 1990. The changes incorporated in this Opinion were made solely for the purpose of publication and in no way represent a substantive departure from the January 19 Memorandum and Order.

2. Sixteen of the Armstrong defendants moved to intervene, and presented oral argument on December 18, 1989. The seventeenth defendant, Freehold Cartage Co., filed a subsequent motion to intervene, returnable on the papers pursuant to Fed.R.Civ.P. 78 on January 16, 1990. The Freehold Cartage motion and the opposition by the United States rely primarily on the same arguments made in the prior intervention motion. This Memorandum and Order resolves both motions.

States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

These provisions differ only in the burden of proof under the fourth part of the test: Rule 24(a) places the burden of showing inadequate representation on the applicant for intervention, whereas § 113(i) of CERCLA places the burden on the government to show that the applicant's interests are adequately represented.[3] CERCLA's intervention provisions, however, do not prevent parties from moving to intervene under Fed.R.Civ.P. 24 as well. *See* § 310(h) of CERCLA, 42 U.S.C. § 9659(h).[4]

The United States in the *Acton* case first opposes intervention of right on the grounds that Congress in creating § 113(i) of CERCLA did not intend to permit dissatisfied non-settlors to intervene in order to challenge the entry of CERCLA consent decrees. As noted above, however, the Armstrong defendants have moved under *both* Fed.R.Civ.P. 24(a)(2) and § 113(i). Rule 24 creates an intervention right for "anyone" who complies with the rule's other requirements. Fed.R.Civ.P. 24(a)(2). Moreover, the Court need not consider the legislative history of the CERCLA provisions, as the statute's terms are unambiguous. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Malloy v. Eichler*, 860 F.2d 1179, 1183 (3d Cir. 1988). Section 113(i) gives the intervention rights to "any person" who satisfies the section's requirements. Accordingly, the

Government's argument will be disregarded.

The Court next considers the four requirements of intervention as of right. The first requirement, timeliness of the motion, is not in issue, as the Government has not opposed the motion on this ground. The second requirement, the existence of a protected interest, is the essential inquiry for this motion. The Government argues that the Armstrong defendants do not have such an interest because the interest is an "economic," as opposed to a "legally protected" interest, and because the interest is contingent, not direct.

This Court disagrees with the Government's position. The Armstrong defendants seek to preserve their statutory right to contribution, as created by § 113(f)(1) of CERCLA, 42 U.S.C. § 9613, which provides:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.

This right to contribution will be extinguished against all settling defendants in *Acton* if the consent decree is approved. *See id.* at § 9613(f)(2).[5] Thus, the Arm-

---

**3.** As discussed *infra*, this distinction proves irrelevant for the purposes of this motion.

**4.** Section 310(h) provides:
This chapter does not affect or otherwise impair the rights of any person under Federal, State, or common law, except with respect to the timing of review as provided in section 9613(h) of this title or as otherwise provided in section 9658 of this title (relating to actions under State law).

**5.** Section 9613(f)(2) provides:
A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

strong defendants are not asserting only an economic interest; they seek to protect a statutory right that later may be extinguished.

The cases on which the Government primarily relies in support of its position are distinguishable on their facts. In *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir.) (en banc), *cert. denied sub nom. Morial v. United Gas Pipe Line Co.*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), the Fifth Circuit denied a motion to intervene made by the customers of a New Orleans Utility in a contract dispute between the utility and its supplier of fuel. The customers sought to intervene on the grounds that the outcome of the contract dispute would affect the price of electricity. The court denied the motion to intervene on the grounds that the customers held no third-party beneficiary rights in the contract, and otherwise held nothing but an economic interest in the outcome. *See id.* at 463–470. Unlike the proposed intervenors in *New Orleans Public Service*, however, the Armstrong defendants have at this time, and will continue to have pending disposition of the consent decree, a statutory right of contribution.

The Government also relies on *United States v. Browning–Ferris Indus.*, No. 89–568–A (M.D.La. Nov. 15, 1989) (attached as United States' Ex. 3), in which a third party was not allowed to intervene to protect its right to contribution under CERCLA. In that case, the United States brought two actions regarding the cleanup of a superfund site. Marathon Petroleum Co., a settling party in the first action, subsequently moved to intervene in the second action, claiming the need to protect its right to seek contribution from the Browning–Ferris Industries, a non-settling party in the first action, but a settling party in the second.

The Court denied the motion to intervene on the grounds that Marathon pursued a contribution action against Browning–Ferris arising out of the first action, and that Marathon also could pursue claims for contractual indemnification against Browning–

Ferris, such claims not being extinguished by the entry of the second consent decree. In short, the Court viewed Marathon as claiming a right to intervene because the consent decree in the first action was not as beneficial as the consent decree in the second. *Id.* at 8. In the instant case, however, the right to contribution is the sole mechanism through which the Armstrong defendants may be made whole if liability is imposed on them beyond their "fair share." Accordingly, the Armstrong defendants have established the existence of a substantial legally protected interest.

The Government also challenges intervention on the grounds that the Armstrong defendants' right to contribution is contingent on, among other things: 1) whether this court approves the consent decree; 2) whether the United States pursues and wins its suit against the Armstrong defendants; and 3) whether the Armstrong defendants are found to be liable for more than their "fair share." Although these factors indeed may affect the outcome or success of the Armstrong defendants' contribution action, none of these "contingencies" go to the existence of the right itself. Section 113(f)(1) of CERCLA vests in "any person" the right to seek contribution "from any other person who is liable or potentially liable ... during or following any civil action [under CERCLA]." The fact that the Armstrong defendants may later lose their right of contribution against the settling defendants once the consent decree has been approved does not make the right contingent at present.

Moreover, the Government's position, if accepted by the Court, would in fact vitiate the right of contribution created in § 113(f)(1). Under the Government's theory, non-settling potentially responsible parties ("PRPs") could not seek contribution against the PRPs who are signatories to an unapproved consent order, on the grounds that the non-settlors' interest is contingent; once the consent decree were approved, however, non-settlors would be barred from seeking contribution under § 113(f)(2).

Finally, the case on which the Government relies to show that the Armstrong defendants' interest is contingent, *Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629 (1st Cir.1989), is also distinguishable on its facts. *Dingwell* arose out of CERCLA action in which Mr. Dingwell was named as a PRP for dumping at a site in Gray, Maine. Dingwell's co-defendants entered into a proposed consent decree with the EPA and the Maine Department of Environmental Protection. During these proceedings, Dingwell's insurers agreed to pay for his legal expenses, but expressly reserved the right to deny indemnification for any liability imposed on him. Subsequent to signing the proposed consent decree, the co-defendants sought to negotiate a settlement for their contribution and indemnity claims against Dingwell. Dingwell's insurer, Travelers Indemnity, did not respond to settlement offers. Dingwell, upon being assured that the insurer reserved the right to deny liability, entered into direct negotiations with the co-defendants. Both sides reached an agreement in September 1988, by which Dingwell would assume 65% of the cleanup costs, join the consent decree, and assign to the co-defendants his indemnification rights against his insurers. In return, the co-defendants waived their claims against Dingwell and promised to seek satisfaction of his obligation solely from insurance assets.

Two days before the consent decree was to take effect, Travelers Indemnity filed a declaratory judgment action seeking an order that they were not liable to indemnify Dingwell for cleanup costs. Over a month later, the co-defendants filed suit against Dingwell, for the purposes of entry of consent judgment in accord with the consent decree. The insurance company then moved to intervene in the consent judgment action. The District Court denied the motion to intervene on the grounds that the insurer had no protected interest. The First Circuit affirmed on this ground.

In its affirmance, the First Circuit considered three possible interests that could

be asserted by the insurer: 1) an interest in minimizing Dingwell's liability; 2) an interest in establishing that Dingwell's claims are not covered by the policy, or that his claims had been waived; and 3) an interest in staying the indemnification action pending resolution of the declaratory judgment action. *Id.* at 638. The Court found none of these interests protected for purposes of 24(a), but in so finding held that only the *first* potential interest was contingent: [6]

> The problem with the first potential interest is that it is contingent. There can be no dispute that an insurer has a direct interest in a lawsuit brought by an injured party against its insured when the insurer admits that the claim is covered by the policy in question. When the insurer offers to defend the insured but reserves the right to deny coverage, however, the insurer's interest in the liability phase of the proceeding is contingent on the resolution of the coverage issue. Accordingly, the asserted interest is not cognizable for purposes of Rule 24(a)(2). We do not regard this conclusion as overly "legalistic" or "mechanical." ... Instead, we view it as reflecting the well-established policy that an insurer who reserves the right to deny coverage cannot control the defense of a lawsuit brought against its insured by an injured party.... Allowing the insurer to intervene to protect its contingent interest would allow it to interfere with and in effect control the defense. Such intervention would unfairly restrict the insured, who faces the very real risk of an uninsured liability, and grant the insurer "a double bite at escaping liability."

*Id.* at 638–39 (citations omitted).

In this case, the Armstrong defendants do not seek intervention as a way of manipulating others' defenses so that they may fare better in their own litigation. Nor is there present any policy akin to the one enunciated by the First Circuit regarding insurers who reserve the right to deny coverage. In the instant case, the Armstrong defendants seek to intervene so that

---

**6.** The Court found the second interest to be unrelated to the liability phase, and found the third interest to be a combination of the first two. *Id.* at 640.

they may protect their own contribution rights. The relationship between insurer and insured, which factored heavily into the First Circuit's decision in *Dingwell* is completely absent here. Thus, *Dingwell* is distinguishable, and the settlor's arguments regarding the contingency of the interest are meritless.

Having found that the Armstrong defendants have a protected legal interest, it is apparent that the *Acton* litigation may impede or impair the Armstrong defendants' ability to protect that interest. Indeed, this Court's approval of the consent decree would eliminate altogether the Armstrong defendants' contribution claims against the settling defendants.

■ Finally, it is undisputed by the Government that no party to the *Acton* litigation adequately represents the Armstrong defendants' interests. The United States argues that the Armstrong defendants, by submitting public comments, have ensured that their interests would be represented in the consent decree proceeding. Adequate representation, without more, however, does not satisfy the fourth part of the intervention test under either Rule 24(a)(2) or § 113(i) of CERCLA: the rule requires not merely adequate representation, but adequate representation *"by existing parties."* There is no party to the consent decree that adequately represents the Armstrong defendants' interests.

The Armstrong defendants will be allowed to intervene. Because this Court finds intervention appropriate under Fed.R. Civ.P. 24(a)(2) and 42 U.S.C. § 9613(i), it need not consider whether intervention is proper under the permissive intervention provisions of Fed.R.Civ.P. 24(b)(2), or whether consolidation would be appropriate.[7]

A Memorandum and Order consistent with this Opinion already has been entered.

---

[7]. At oral argument on December 18, 1989, counsel for the first sixteen *Armstrong* defendants conceded that if they were allowed to intervene, the motion for consolidation would be superfluous. Counsel for Freehold Cartage adopted this position by its reliance on prior arguments.