## STATE OF ARIZONA and City of Phoenix, Plaintiffs,

### v.

## MOTOROLA, INC., et al., Defendants.

### No. CIV 89–1700–PHX–CAM.

United States District Court, D. Arizona.

July 19, 1991.

---

Mark E. Freeze, Karen L. Peters, Christopher D. Thomas, Squire, Sanders & Dempsey, M. James Callahan, H. Paul Graves, Asst. City Attys., Phoenix, Ariz., for plaintiff City of Phoenix.

Linda J. Pollock, Asst. Atty. Gen., Phoenix, Ariz., for plaintiff State of Ariz.

Robert H. Allen, Michael P. Berman, Dan M. Durrant, David Hadley, Jr., M. Byron Lewis, Gayla L. Moss, Newman R. Porter, Phoenix, Ariz., for defendants.

## ORDER

MUECKE, District Judge.

Having considered all the briefing filed with regard to defendants' joint motion to intervene in lawsuit II and motion for order allowing expedited discovery, the Court concludes that this matter is appropriate for submission without oral argument[1] and concludes as follows:

## BACKGROUND

In October 1989, the Arizona Department of Environmental Quality ("ADEQ") and the City of Phoenix ("City") filed suit against sixteen separate defendants, seeking to recover approximately $54 million in cleanup costs incurred or to be incurred as a result of the toxic wastes found at the 19th Avenue Landfill in Phoenix. In July 1990, Judge Copple ruled that the State of Arizona ("State") must be substituted as plaintiff for ADEQ.[2]

Plaintiffs seek to recover $54 million in cleanup costs pursuant to the Comprehensive Environmental Response, Compensation and Liability Act as amended by the 1986 Superfund Amendments and Reauthorization Act (collectively "CERCLA"). 42 U.S.C. §§ 9601 *et seq.*

In the lead case, No. CIV 89–1700–PHX–CAM, in this consolidated matter ("Lawsuit I"), the State of Arizona and the City of Phoenix joined as plaintiffs to seek recovery of costs which either were incurred or were to be incurred in response to the alleged release or threatened release of hazardous substances from the 19th Avenue Landfill. In the second lawsuit, the State of Arizona filed a complaint against the City of Phoenix, *State of Arizona v. City of Phoenix,* No. CIV 91–0237–PHX–CAM, ("Lawsuit II"). This lawsuit was filed to facilitate the approval of the proposed consent decree between the State and the City. Defendants seek to intervene in this lawsuit.

---

1. A district court has the discretion to rule on motions without a hearing. *See United States Fidelity and Guaranty Co. v. Lawrenson,* 334 F.2d 464, 467 (4th Cir.), *cert. denied,* 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed.2d 71 (1964); Fed. R.Civ.P. 78.

2. All references to plaintiffs include the State of Arizona and the City of Phoenix.

## DISCUSSION

### I. *Motion to Intervene*

Defendants seek to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure and § 113(i) of CERCLA, 42 U.S.C. § 9613(i). Rule 24 provides in relevant part:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) **Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Defendants also seek to intervene pursuant to § 113(i) of CERCLA, which provides in relevant part:

In any action commenced under this chapter ... in a court of the United States, any person may intervene as matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. § 9613(i).

### A. Intervention as a Matter of Right

■ Rule 24(a) and § 113(i) differ only in the burden of proof with respect to the adequate representation requirement. Under both sections, a person may intervene as a matter of right if he or she satisfies a four part test: (1) the party's motion must be timely; (2) the party must assert an interest relating to the property or transaction which is the subject of the action; (3) the party must be so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the party's interest must not be adequately represented by other parties. *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir.1980).

The timeliness requirement does not appear to be at issue as plaintiffs did not oppose the motion on that ground. The parties, however, dispute the second requirement, which concerns whether defendants have a substantial and legally protectable interest in Lawsuit II.

Any interest that is "direct, non-contingent, substantial and legally protectable" will satisfy the interest requirement. *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir.1981). The interest test " 'is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.' " *County of Fresno*, 622 F.2d at 438 (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.Cir.1967)).

Defendants seek to intervene in order "to protect their rights with respect to the proposed Consent Decree [between the State and the City] (by which plaintiffs apparently contend defendants will be bound) and to preserve their statutory right to contribution as created by Section 113(f)(1)[3] of CERCLA, 42 U.S.C. § 9613...." Defendants' Motion, at 8. Defendants rely on *United States v. Acton*, 131 F.R.D. 431 (D.N.J.1990) for the proposition "that the right to contribution granted by Section 113(f)(1) of CERCLA is a substantial legally protectable interest

---

**3.** Section 113(f)(1) of CERCLA provides in relevant part:

Any person may seek contribution from any other person who is liable or potentially liable under Section 9607(a) of this title, during or following any civil action under Section 9606 of this title or under Section 9607(a) of this title.

which is not contingent and which satisfies the test for intervention under either Rule 24(a)(2) or Section 113(i)." Defendants' Motion, at 9.

Congress designed CERCLA to encourage early settlement by parties potentially responsible for cleanup costs:

> CERCLA was designed "to protect and preserve public health and the environment." That Congressional purpose is better served through settlements which provide funds to enhance environmental protection, rather than the expenditure of limited resources on protracted litigation. Without question, Congress passed the SARA amendments to encourage settlements for this very reason.

*In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution,* 712 F.Supp. 1019, 1028–29 (D.Mass. 1989) (citations omitted). CERCLA provides two incentives for settlement. First, § 113(f)(2), added by SARA, provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). This protection against contribution allows settling parties to pay their agreed settlement and end their involvement in costly litigation without "fear that a later contribution action will compel them to pay still more money to extinguish their liability." *Acushnet,* 712 F.Supp. at 1027.

Second, under CERCLA, even "if the settlor pays less than its proportionate share of liability, the non-settlors, being jointly and severally liable, must make good the difference." *Id.* This risk of disproportionate liability encourages parties to resolve their liability early, lest they be found responsible for amounts not paid by settling defendants.[4]

The Court does not believe that allowing intervention in this matter would be consistent with CERCLA's joint and several liability scheme and its policy favoring early settlements. In *United States v. Beazer East, Inc.,* 22 Chem.Waste Lit.Rep. 218 (N.D.Ohio 1991), the court, rejecting the *Acton, supra,* rationale, denied intervention because it would encourage recalcitrance by potentially responsible parties ("PRPs"). *Id.* at 222–23. This court believes that the *Beazer* rationale is more consistent with CERCLA's statutory scheme. As the *Beazer* court stated:

> This Court does not find the reasoning of the *Acton* court persuasive and chooses not to follow the holding in *Acton.* This Court finds instead, that Beazer does not qualify as a person who has a right to intervene under Section 113(i) of CERCLA. If this were not the case, parties such as Beazer could refuse to engage in meaningful settlement negotiations regarding clean up and response costs of a hazardous waste site. Then, at the point when a large number of PRPs had agreed to a proposed settlement and such a settlement was ready for the court's approval, a non-settling party could intervene in the action, cause delays in implementation of the cleanup of the hazardous waste site, and effectively thwart the settlement process. The appropriate avenue for Beazer to pursue was to lodge an objection to the proposed consent decree, which is what Beazer has in fact done.

*Id.* at 222–23.[5]

Similarly, the court in *United States v. Mid–State Disposal, Inc.,* 131 F.R.D. 573 (W.D.Wis.1990), denied intervention to par-

---

**4.** In addition, the threat of disproportionate liability and the loss of alleged rights of contribution do not justify rejection of a consent decree. *See, e.g., United States v. Cannons Engineering Corp.,* 899 F.2d 79, 91 (1st Cir.1990) ("Congress explicitly created a statutory framework that left non-settlors at risk of bearing a disproportionate amount of liability"); *City of New York v. Exxon Corp.,* 697 F.Supp. 677, 694 (S.D.N.Y.1989) ("To the extent that the non-settling parties are disadvantaged in any con-

crete way by the applicability of Section 113(f)(2) to the overall settlement, their dispute is with Congress.").

**5.** It should be noted that defendants in this case also have lodged comments to the proposed State–City Consent Decree with the Arizona Department of Environmental Quality and the United States Environmental Protection Agency. Plaintiffs' Response, at 6 n. 3.

ties who claimed an interest in avoiding disproportionate liability and preserving their contribution rights against settling parties:

> Intervenors argue that if they are not allowed to intervene they will be prejudiced because they may be found liable for a disproportionate share of the cleanup costs in subsequent cost recovery or contribution actions brought by the government or settling defendants. Protection from contribution actions is a statutory incentive for settlement. After refusing to reach a settlement, intervenors cannot now claim prejudice because of potential contribution actions against them.

*Id.* at 577. The *Mid–State* court also noted that intervention to attack a consent decree would "render the negotiations between the original parties a waste of time and stall the implementation of the remedy designed to benefit the public health and safety at the site." *Id.* at 576.

Here, defendants, like the movants in *Mid–State*, are unwilling or unable to settle. Yet, they wish to be able to object to the settlement of other parties. This court will not allow defendants to frustrate the settlement process simply because there is a possibility that they may bear a disproportionate liability of the cleanup costs. "Congress explicitly created a statutory framework that left non-settlors at risk of bearing a disproportionate amount of liability." *Cannons,* 899 F.2d at 91. "To the extent that the non-settling parties are disadvantaged in any concrete way by the applicability of Section 113(f)(2) to the overall settlement, their dispute is with Congress." *City of New York v. Exxon Corp.,* 697 F.Supp. at 694.

The Court, in light of CERCLA's statutory scheme favoring early settlements and joint and several liability, believes that defendants do not have a substantial and legally protectable interest. At best, defendants have a remote economic interest that is insufficient to support intervention. *See New Orleans Public Service v. United*

*Gas Pipe Line,* 732 F.2d 452, 464 (5th Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984) ("By requiring that the applicant's interest be not only 'direct' and 'substantial,' but also 'legally protectable,' it is plain that something more than an economic interest is necessary.") To constitute a legally protectable interest, "the interest must be one which the *substantive law* recognizes as belonging to or being owned by the applicant." *Id.* Here, defendants' right to contribution is at most a contingency, and is not something which it owns. Finally, to the extent defendants challenge the fairness or adequacy of the State/City Consent Decree, those issues will be addressed in the context of the motion for entry of consent decree. In short, the Court believes that allowing intervention in this matter would only frustrate CERCLA policy and, in effect, eliminate CERCLA's statutory incentive for settlement.[6]

### B. Permissive Intervention

■ Rule 24(b)(2) gives the court discretion to permit intervention when certain factors are satisfied, provided such intervention will not unduly delay or prejudice the rights of the original parties. Fed.R.Civ.P. 24(b)(2); *Spangler v. Pasadena City Board of Education,* 552 F.2d 1326, 1329 (9th Cir.1977); *Manasota–88 v. Tidwell,* 896 F.2d 1318, 1323 (11th Cir.1990) (quoting *Athens Lumber Co., Inc. v. Fed. Election Comm.,* 690 F.2d 1364, 1366 (11th Cir.1982)). Unlike intervention of right, which seems to pose only a question of law, *Cook v. Boorstin,* 763 F.2d 1462, 1468 (D.C.Cir.1985), an application for permissive intervention is addressed to the discretion of the court. 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1902, at 231 (West 1986).

■ When considering a permissive intervention motion, the court generally considers whether the would-be intervenors can demonstrate that an alleged claim or defense and the main action have a common question of fact or law. Fed.R.Civ.P.

---

**6.** In light of the Court's conclusion that defendants do not have a substantial and legally protectable interest, the Court sees no need to address the last two intervention of right elements.

24(b)(2). The court must also determine whether the rights of the original parties will be prejudiced by permitting intervention, Fed.R.Civ.P. 24(b), and whether the interest of judicial economy will best be served by allowing intervention. *Id.* Other factors include the legal position sought to be advanced by the intervenors, and whether the would-be intervenors "will significantly contribute to full development of the underlying factual basis in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler*, 552 F.2d at 1329.

■ For the same reasons that the court was compelled to conclude that it would be inappropriate to permit intervention as of right, the court must also conclude that it is imprudent to allow permissive intervention. That is, allowing intervention would frustrate the CERCLA statutory scheme as it relates to joint and several liability and the encouragement of early settlement. Further, the would-be intervenors are adversaries of both original parties in Lawsuit II; their intervention would only impede or prevent entry of the State–City Consent Decree in Lawsuit II. *See Mid–State*, 131 F.R.D. at 576 (intervention "would render the negotiations between the original parties a waste of time and stall the implementation of the remedy designed to benefit the public health and safety at the site"); *Beazer*, 22 Chem. Waste Lit.Rep. at 225 ("Allowance of intervention ... will unduly delay adoption of the consent decree and implementation of the clean up of the Summit Facility."). In addition, it appears from defendants' motion that numerous additional issues could be injected into the dispute; issues will prejudice the original parties to the suit and cause undue delay. Moreover, such intervention will not serve judicial economy in that it would delay entry of the State–City Consent Decree. Finally, the court cannot conclude that these would-be intervenors will contribute to the full and fair adjudication of the original parties' rights, nor will they generate a more complete understanding of the factual basis that gives rise to the dispute.

## II. *Motion for Order Allowing Expedited Discovery*

In light of the Court's conclusion that defendants should not be allowed to intervene in Lawsuit II, this motion appears to be moot for the reasons stated in the previous discussion. However, in the interest of thoroughness, the Court will briefly address defendants' contentions.

This case is divided in three phases for purposes of discovery. Phase I discovery involves liability issues on the complaint and on the counterclaims and cross-claims among the initial parties. Phases II and III essentially involve, respectively, liability issues raised by third-party complaints, and apportionment of response costs under CERCLA.

Despite the well-established discovery procedure, defendants assert that they should be allowed to conduct discovery into certain areas before the Court rules on the proposed State and City Consent Decree. Defendants' Motion, at 2. The State/City Consent Decree is a part of another matter (CIV No. 91–237–PHX–CAM), which is consolidated with the instant action. Defendants also request the Court to issue substantive rulings on certain issues before ruling on the State/City Consent Decree. *Id.*

With regard to defendants' request for discovery, defendants apparently need discovery to support their assertion that the City's share of response costs should be greater than the twenty percent provided for in the State/City Consent Decree. Defendants claim that they need discovery to assess whether the State/City Consent Decree is fair, adequate, reasonable, and consistent with the law.

■ Before approving a proposed consent decree, a court must satisfy itself that the decree is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve. *Cannons*, 899 F.2d at 85; *Kelley v. Thomas Solvent Co.*, 717 F.Supp. 507, 516 (W.D.Mich.1989). The court's task simply "is to determine whether the settlement represents a reasonable compromise, all the while bearing in mind

the law's generally favorable disposition toward the voluntary settlement of litigation and CERCLA's specific performance for such resolutions." *United States v. Rohm & Haas Co.*, 721 F.Supp. 666, 680–81 (D.N.J.1989).

■ In reviewing CERCLA consent decrees, courts defer to the judgment of the environmental enforcement agency that negotiates the decree since the agency has the expertise to determine whether the decree will help or hinder the effort. *Cannons*, 899 F.2d at 87; *City of New York v. Exxon Corp.*, 697 F.Supp. at 692. In *Cannons, supra,* the First Circuit noted that while settlement terms must be roughly correlated upon some acceptable measure of comparative fault, what constitutes the best measure of comparative fault should be left largely to the agency's expertise. 899 F.2d at 87. The Court indicated that an agency must have flexibility to depart from any apportionment formula to address other factors such as awarding discounts on comparative fault for assumption of open ended risks or for anticipating savings in transactional costs for early settlement. *Id.* at 88. As long as the agency provides a reasonable justification for apportionment, "judicial intrusion is unwarranted." *Id.* Here, defendants seek discovery to challenge what they perceive to be the unfairness of the apportionment of costs between the State and the City, and potential disproportionate effect upon them if the State/City decree is approved. Aside from the court's belief that this issue should be dealt with—if at all—when the motion for entry of consent decree is considered, the court is unwilling to allow discovery so that the non-settling defendants can attempt to usurp the agency's authority to structure settlement. Congress created CERCLA to encourage settlement, thereby reducing "the time and expense of enforcement litigation that necessarily diverts time and money from cleanup and restoration." *Acushnet,* 712 F.Supp. at 1027.

In addition, courts are not required to, and should not, conduct a *de novo* review of all the facts and circumstances considered by the parties. Though not stated clearly, defendants apparently challenge the "substantive fairness" of the State/City Consent Decree. The basis for such a challenge is unclear, although it appears that defendants are primarily concerned that the City's share of the response costs leaves defendants with a disproportionate amount of the liability.

■ An evidentiary hearing to determine whether to evaluate the allocation of liability is unnecessary and inconsistent with CERCLA policy favoring early settlements. *See Kelley v. Thomas Solvent Co.,* 717 F.Supp. 507, 519 (W.D.Mich.1989) (hearing on whether a settlement represents percentage of responsibility that would be adjudicated if the case were tried would subvert the very purpose of settlement); *Acushnet,* 712 F.Supp. at 1031 n. 21 (evidentiary hearing amounting to trial on the merits would be impractical and frustrate the intent of Congress to encourage settlement). While comparative levels of fault may be minimally relevant in considering whether a settlement is fair, a court should not conduct a *de novo* review of all the facts and circumstances considered by the parties in arriving at the settlement. *See Rohm & Haas,* 721 F.Supp. at 685 (judicial review of decree is not "a fact-finding mission"). Instead, courts should defer to the agency which negotiated the decree to determine the best measure of comparative fault.[7] Courts need not "ensure that the settlement is perfectly calibrated in terms of shares of liability so long as it is generally fair and reasonable." *Acushnet,* 712 F.Supp. at 1032. Indeed, consent decrees should not be evaluated on the basis of their potentially disproportionate effect on non-settling parties. *See Cannons,* 899 F.2d at 91–92. Were the court to grant defendants' request, it would effectively postpone consideration of the State/City Consent Decree until after

---

7. An agency's determination must be upheld unless it is "arbitrary, capricious and devoid of a rational basis." *Cannons,* 899 F.2d at 87.

completion of comparative fault discovery regarding defendants and the City. This is inconsistent with CERCLA. CERCLA was designed to encourage settlement and provide PRPs a measure of finality in return for their willingness to settle. Defendants in CERCLA cases "generally settle for substantially less—indeed, often for far less given the inherent problems of proof in these cases—than the asserted damages." *Acushnet*, 712 F.Supp. at 1032. Defendants' fear of disproportionate liability is not sufficient to justify discovery. "Disproportionate liability, a technique which promotes early settlements and deters litigation for litigation's sake, is an integral part of the statutory plan." *Cannons*, 899 F.2d at 92.

■ Even assuming the requested discovery related to the adequacy of the chosen remedy—which it does not—it is clear that judicial review of the adequacy of the remedy proposed in the State/City Consent Decree is limited to the administrative record. 42 U.S.C. § 9613(j) [8]; *see Kelley v. Thomas Solvent Co.*, 21 Chem.Waste Lit. Rptr. 185, 190 (W.D.Mich.1990); *see also U.S. v. Cannons Engineering Corp.*, 720 F.Supp. 1027, 1038 (D.Mass.1989) (remedy selection should be upheld unless arbitrary and capricious). This limitation in effect renders discovery beyond the administrative record irrelevant. "As a general rule, review on the administrative record eliminates the need for all discovery, as the administrative contains all that is relevant to the decision in issue." *United States v. Seymour Recycling Corp.*, 679 F.Supp. 859, 865 (S.D.Ind.1987); [9] *see U.S. v. Wastecontrol of Florida, Inc.*, 730 F.Supp. 401, 30 Envt'l Rptr. Cases 1491, 1493 (M.D.Fla. 1989) (generally no discovery is required since role of court is to review administrative record for arbitrary and capricious decisionmaking).

Finally, defendants assert that the Court should make a substantive ruling on the divisibility of harm defense before ruling on the proposed State/City Consent Decree. The relevance of this argument is less than clear. Further, even assuming that divisibility of harm was relevant to the decree, it is still unclear how that would prevent this Court from entering the decree.

■ While the court may use equitable factors to apportion damages in the apportionment phase of the case, this does not negate defendants' joint and several liability. *United States v. Kramer*, 757 F.Supp. 397, 412–13 (D.N.J.1991). Defendants' assertion that the "proposed State/City Consent Decree cannot be made without first determining which portions of the remedy and response costs are separable and divisible," Defendants' Motion, at 11, is misplaced. Having to determine which portions of the remedy and response costs are separable and divisible, in effect, undermines CERCLA's statutory mandate favoring early settlements and getting a headstart on response costs. [10] "[I]t would dis-

---

8. Title 42 U.S.C. § 9613(j) provides in pertinent part:

    **(1) Limitation**
    [J]udicial review of any issues concerning the adequacy of any response action taken or ordered by the President *shall be limited to the administrative record.* (emphasis added).

9. The House Report relating to Section 113(j), codified at 42 U.S.C. 9613(j), states:
    [L]imiting judicial review of response actions to the administrative record expedites the process for review, avoids the need for time-consuming and burdensome discovery, reduces litigation costs, and ensures that the reviewing court's attention is focused on the criteria used in selecting the response.
    H.R.Rep. No. 99–253, 99th Cong., 2d Sess., *reprinted in* 1986 U.S. CODE CONG. & ADMIN.NEWS 2835, 2863.

10. As the D.C. Circuit Court of Appeals noted in discussing a consent decree under the Clean Water Act:
    [I]t is precisely the desire to avoid a protracted examination of the parties' legal rights which underlies consent decrees. Not only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation. Thus [v]oluntary settlement of civil controversies is in high judicial favor.
    *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C.Cir.1983) (quotations omitted). The D.C. Circuit's observation is even more compelling in the CERCLA context where the guiding principle is the public interest and where early settlement is specifically encouraged in order to devote more time and money to clean up and restoration.

**150**

serve a principal end of the statute—achievement of prompt settlement and a concomitant head start on response activities—to leave matters in limbo until more precise information was amassed." *Cannons,* 899 F.2d at 88. Arguably, one of reasons underlying the policy favoring early settlement is so that the settling party can avoid the costs and expense of litigating whether a harm is divisible and, if so, how the liability should be apportioned. It has yet to be determined whether the harm at the 19th Avenue Landfill is divisible. By settling early, a party can avoid the expense of participating in that determination.

### CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

(1) Defendants' motion to intervene (Doc. # 473) is denied.

(2) Defendants' motion for order allowing expedited discovery and scheduling of status conference (Doc. # 477) is denied.