990 F.Supp. 907 (1998)
UNITED STATES OF AMERICA, Plaintiff,
v.
BASF CORPORATION, et al., Defendants.
No. 96-75279.
United States District Court, E.D. Michigan, Southern Division.
January 7, 1998.
*908 Frank Bentkover, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC, David G. Hetzel, Ronald W. Zdrojeski, LeBouf, Lamb, Greene, & MacRae, LLP, Hartford, CT, Paul S. Lewandowski, Butzel Long, Detroit, MI, Thomas M. Woods, Freeman, McKenrie, Mt Clemens, MI, for Plaintiffs.
Ruben Acosta, David H. Fink, Fink Zausmer, P.C., Farmington Hills, MI, for Waste Management Inc. & Chemical Waste Mgmt.
Phil Adkinson, Adkinson & Need, Bloomfield, MI, for Village of Leonard.
Richard J. Bahls, Bahls & Shamblin, Lapeer, MI, for Village of Metamora.
Leonard K. Berman, Hainer, Demorest & Berman, PC, Troy, MI, for Bridgestone/Firestone.
Karl S. Bourdeau, Robert Brager, Susan H. Ephron, Bevendge & Diamond, Washington, DC, Ulysses S. Boykin, Matthew R. Halpin, Lewis, Clay & Munday, Detroit, MI, for General Electric.
Kathryn A. Buckner, Seyburn, Kahn, Ginn, Bess, Deitch & Serlin PC, Southfield, MI, for Metal Cote Chemical, Michlin Chemical, Paint Work, Inc. & Dunlop Collision.
*909 David J. Carney, William E. Coughlin, Kevin P. Hallquist, Calfee, Halter & Griswold, Cleveland, OH, for Dunbarton Corp.
Brian Clark, Chemical Waste Management, Inc., Oak Brook, IL, George F. Curran, III, Stephen E. Handleman, Cummings, McClorey, Davis & Acho PC, Farmington Hills, MI, for Sawicki & Sons.
Charles M. Denton, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, MI, for Village of Metamora, Addison Township, Imlay City, Lapeer County Rd Commission, Lapeer Vocational Technical School, Oxford Township, Village of Dryden & Village of Oxford.
Brian D. Devlin, Asst. Attorney General, MI Dept of Attorney General, Environmental Protection Div., Lansing, MI, Frederick J. Dindoffer, Bodman Longley & Dahling, LLP, Detroit, MI, for Metamora Industries, Inc., Abitbi-Price Corp.
Donald R. Dixon, Ferndale, MI, Doug A. Donnell, Mika, Myers, Beckett & Jones, Grand Rapids, MI, for Gage Products.
Christopher J. Dunsky, HonigmanMiller Schwartz & Cohn, Detroit, MI, for Trayco, Inc., Textron, Inc.
Michael S. Elder, Goodwin, Procter & Hoar, Albany, NY, Gary S. Eller, Boothman Hebert & Eller, Detroit, MI, Thomas J. Fayfer, Paul F. Bohn, Jeffrey S. Jones, Fausone, Taylor & Bohn LLP, Northville, MI, for Stricker Paint.
William D. Gilbride, Jr., Abbott, Nicholson Quilter, Essahki & Youngblood, Detroit, MI, Carol W. Grombala, Kohl Secrest Wardle Lynch Clark & Hampton, Farmington Hills, MI, for Precision Coatings.
Michael J. Hainer, Mark S. Demorest, Hainer & Demorest, Troy, MI, Christopher A. Hajek, Gault Davidson, Flint, MI, for Van Etten Disposal.
Brian Herschfus, Wood, Kull, Herschfus, Lay & Kull, Farmington Hills, MI, for American Jetway.
Leslie Hulse, General Electric, Corporate Environmental Programs, Albany, NY, for General Electric.
Howard E. Jarvis, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for Firestone Tire.
Nancy L. Kahn, Foster, Swift, Collins & Smith, PC, Farmington Hills, MI, for Frankel Metal.
Michael Kay, Dow Chemical Company, Legal Department, Midland, MI, for Dow Chemical.
Daniel P. King, Pedersen, Keenan, King, Wachseberg & Andrzejak, PC, Farmington Hills, MI, for DeSoto, Argo Paint & Chemical, & Argus Paint Co.
John R. LaParl, Jr., Smith, LaParl & Mequio, PC, Portage, MI, for Township of Metamora.
Gary R. Letcher, Arthur A. Schulcz, Sr., The Harker Firm, Washington, DC, for Akzo Nobel Coatings.
Jeffrey J. Mayer, Raymond & Prokop, PC, Southfield, MI, for BF Goodrich.
Susan E. Morrison, VanderKloot, Rentrop, Martin, Haynes & Morrison, PC, Bloomfield Hills, MI, for Oxford Township.
Michael J. Nolan, Kohl, Harris & Peters, PC, Metamora, MI, for Bradford Tool & Die and Bushman Disposal.
Dustin P. Ordway, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Arkwright, Inc.
Bernard P. Paige, Patrick J. Ennis, Colombo & Colombo, Bloomfield Hills, MI, for Dow Chemical.
Neil T. Peters, Kohl, Harris & Peters, PC, Metamora, MI, for Metamora Township.
Donald H. Poniatwoski, Nowak, Poniatowski & Morgan, PC, Lapeer, MI, for Lapeer County Press.
Scott R. Powell, Jonathan P. Gerisch, Powell & Gerisch, Ann Arbor, MI, Mary S. Rigdon, U.S. Attorney's Office, Detroit, MI, for Red Spot Paint.
Jamie Schiff, Textron, Inc., Providence, RI, for Textron, Inc./Ex-Cell-O.
Devin S. Schindler, Warner, Norcross & Judd LLP, Grand Rapids, MI, for Standard Detroit Paint.
Eugene E. Smany, Valerie P. Simmons, John D. Tully, Warmer, Norcross & Judd, Grand Rapids, MI, Donald E. Conley, McDonnell, Conley & Neveu, Bloomfield *910 Hills, MI, James R. Temple, Farmington Hills, MI, for Kay Screen Printing.
James R. Temple, Farmington Hills, MI, for Three R Indus., Inc.
Hugh Thomas, Francis J. Newton, Jr., Berry, Moorman, King & Hudson, Detroit, MI, for Acme Precision Products.
L. Nicholas Treinen, Lake Orion, MI, for Mantex Corporation.
Fred R. Wagner, Beveridge & Diamond, PC, Washington, DC, for Dow Chemical.
Thomas M. Woods, Freeman McKenzie, Mt. Clemens, MI, Robert Young, King, Young & Billmeyer, Allen Park, MI, Sherwin E. Zamler, Susan Sadler, Dawanda, Mann, Mulcahy & Sadler, PLC, Bloomfield Hills, MI, for Seaman Industries & Cook Paint & Varnish.
Frances M. Zizila, Gregory L. Sukys, Environmental Enforcement Section, U.S. Department of Justice, Washington, DC.

OPINION and ORDER
FEIKENS, Senior District Judge.

I. INTRODUCTION

United States of America ("plaintiff") filed its complaint in this case on November 18, 1996. The complaint was brought pursuant to Section 107[1] of the Comprehensive Environment Response Compensation Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., a statutory provision that provides plaintiff with the right to sue responsible parties for the reimbursement of costs expended to clean up so-called "Superfund Sites."[2] Contemporaneous with the filing of this suit, plaintiff lodged with this court, pursuant to Section 122[3] of CERCLA, a proposed consent decree between it and a group of 35 potentially responsible parties (hereafter "settlors"). This opinion and order addresses whether that consent decree should be entered.
To decide this matter, I am not required "to determine the best method for measuring fault and apportioning liability." United States v. Cannons Engineering Corp., 899 F.2d 79, 87 (C.A. 1 1990). See also, United States v. Akzo Coatings of America, Inc., 949 F.2d 1409 (C.A.6 1991). Rather, my duty is to "approve of the method proposed by the government unless it is `arbitrary, capricious and devoid of a rational basis'." Id. To do this, I must decide whether the settlement is fair, reasonable and consistent with the purposes of CERCLA. Id at 85. Akzo at 1424. I do so conclude.

II. FACTS

The consent decree presently before me is not the first one entered into between plaintiff and settlors. In March 1993, Judge Stewart Newblatt approved a consent decree ("the 1993 consent decree") that obligated settlors to, among other things, complete some of the work called for in the first phase or operable unit ("OU-1") of the project and to undertake the remedial action called for in the second phase, operable unit two ("OU-2"). See, United States v. BASF-INMONT Corp., et al., 819 F.Supp. 601 (E.D.Mich. 1993). This first consent decree left open, however, settlors' liability for so-called "past response costs," i.e., those costs that the United States Environmental Protection Agency ("EPA") and Department of Justice ("DOJ") incurred in connection with the site through May 15, 1991, plus interest.
The consent decree under present scrutiny, the second one submitted by these parties, covers those pre-May 15, 1991 costs. It specifies that settlors forfeit any claims they may have against plaintiff related to the decree and that, within 45 days of its entry, the settlors will pay EPA $14.564 million plus interest from the date of the lodging of the decree. The consideration for settlors' promise to pay has two important components. First, plaintiff promises not to sue settlors under Section 107(a) of CERCLA[4] to recover past response costs. Second, the consent decree contains a contribution bar prohibiting actions against settlors pursuant to Section 113(f)(2) of CERCLA[5] for matters with which the decree deals.
*911 Plaintiff and settlors maintain that the negotiating framework centered on two figures: 1) the total amount necessary to clean up the Metamora site; and 2) settlors' "fair share" of that cost. The former component is easily calculated by taking the $30,790,000 EPA incurred at the site through May 15, 1991 plus the $5,340,000 in prejudgment interest on those costs through June 1994, and adding those two figures to the approximately $31,265,000[6] settlors would incur under the 1993 consent decree. The sum of these figures, $67,395,000 in present value, is the figure plaintiff estimates is the total site cost.
With regard to determining settlors' "fair share," different reports have placed different degrees of responsibility for the cleanup upon the settlors. One report estimated settlors should pay 38.352% of cleanup costs. By comparison, plaintiff calculated settlors' allocation at 69.5% of the cleanup costs. Settlors sharply dispute plaintiff's allocation primarily because that figure shifts a large portion of the so-called "orphan share" upon them.[7] Nevertheless, combined with the approximately $31,265,000 the settlors have agreed to pay under the 1993 consent decree, the present consent decree before me, which requires settlors to pay an additional $14.564 million in past costs, will insure that settlors' total share of site costs will approach 68% of the estimated $67,395,000 in present value needed to complete the project. In other words, the two consent decrees obligate settlors to pay at least $45,829,000.[8]
Plaintiff arrived at these numbers only after conducting extensive research that included, among other things, review of documentary evidence received from several hundred entities, review of documents and correspondence from potentially responsible parties, interviews of truck drivers and employees employed by the Metamora landfill and by the entities who transported waste there, documents found inside buried drums, and interviews with five executives of U.S. Chemical Co., a company that transported to the Metamora landfill close to 10 million gallons of hazardous waste.[9]

III. ANALYSIS

In spite of its attempts, plaintiff acknowledges that its calculations were not scientific, but rather represented its best effort to fairly apportion responsibility for the cleanup effort. However, my review of the consent decree need not focus on whether the allocations were perfect. See, United States v. Charles George Trucking, 34 F.3d 1081 (C.A.1 1994). Rather, my task is to determine whether the consent decree is fair, reasonable, and consistent with CERCLA's objectives.
I look first to the settlement's substantive fairness. See, United States v. Cannons Engineering Corp., 899 F.2d 79 (C.A.1 1990). My inquiry here is to determine whether the settlors are paying a percentage of the total cleanup costs that roughly approximates the proportion of the environmental damage attributable to their wastes. Because I conclude that the settlement "falls along the broad spectrum of plausible approximations," I hold that it is substantively fair. Id. at 88. The record amply demonstrates that settlors will be responsible for at least 68% of the total cleanup costs. This is an amount almost double that calculated by expert Charles Tisdale and accepted by settlors. It is a mere 1.5% away from the 69.5% figure initially demanded by plaintiff and fairly reflects the fact that settlors have saved plaintiff both time and resources in agreeing early on in the process to a previous consent decree that spared plaintiff the expense of fully litigating this matter.
*912 Dow, Akzo, Gage and Arkwright, have argued that the settlement is not substantively fair because it leaves them liable for a disproportionate share of the cleanup costs. However, even if disproportionate liability were to attach, such a result is clearly contemplated by CERCLA. Congress designed the statute so that the threat of disproportionate liability would encourage parties to settle early with the United States and discourage dilatory and strategic behavior. As numerous courts have pointed out, such a scheme was intended to maximize Superfund reimbursements and minimize the transactional costs of litigation. Cannons, 899 F.2d at 89, In re Acushnet River & New Bedford Harbor, 712 F.Supp. 994, 1027 (D.Mass.1989) (Congressional intent behind CERCLA was to encourage settlement and reduce "the time and expense of enforcement litigation that necessarily diverts time and money away from cleanup and restoration.")[10]
The non-settling parties' position would force me to determine with near mathematical certainty the appropriate portion of liability for the cleanup. Such a review is not warranted. It is axiomatic that de novo review of this sort is not within the purview of courts examining the substantive fairness of settlements. See, U.S. v. Rohm & Haas, 721 F.Supp. 666, 685 (D.N.J.1989), State of Arizona v. Motorola, Inc., 139 F.R.D. 141, 148 (D.Ariz.1991). The reason for such a rule is simple: anything resembling an exact computation would be impossible where, as here, the evidence is ambiguous and incomplete based, in some instances, on nothing more than the hazy memories of truck drivers and landfill employees. The lack of more concrete evidence is a factor in favor of this $14.5 million consent decree. See, Rohm & Haas Co. supra. at 694-695. ("settlement appears to be the most fruitful and responsible course" where there is inherent difficulty in establishing parties' liability with degree of certainty.)
A number of other factors similarly militate in favor of the consent decree's procedural fairness. The four entities objecting to the consent decree's procedural fairness do so initially because they claim they were treated differently than settlors. This charge may not be without some merit. However, the reason for the alleged disparate treatment can easily be traced to the fact that the settlors are different from the objectors in at least one important respect: settlors agreed to a prior consent decree in which they assumed open-ended liability for the second phase of the cleanup that could easily exceed $30 million dollars over the next 30 years. Plaintiff was certainly entitled to take this into account when it negotiated the terms of the present consent decree. See, Acton, supra., 733 F.Supp. at 871-873.
Moreover, requiring plaintiff to welcome the objectors to the negotiating table on equal footing with settlors would deprive plaintiff of an important negotiating tool and would inevitably defeat the often complicated settlement efforts in these types of multilateral bargaining arrangements. CERCLA's stated policy favoring settlement would be defeated along with it. Cannons supports this view:
After all, "divide and conquer" has been a recognized negotiating tactic since the days of the Roman Empire, and in the absence of a congressional directive, we cannot deny the EPA use of so conventional a tool. So long as it operates in good faith, the EPA is at liberty to negotiate and settle with whomever it chooses.
Cannons, 899 F.2d at 93.
I do not agree with the objecting parties that, as a prerequisite to the conducting of procedurally fair negotiations, plaintiff is required to sit down with potentially hundreds of potentially responsible parties and offer to each the same or even similar settlement terms without regard to the individual party's level of culpability or cooperation in the investigation. Setting aside for the moment the practical problems inherent in such an approach, favorable terms are the carrots that encourage cooperation. Unfavorable terms are the stick by which inflexibility is discouraged. While perhaps not the epitome of adroitness, plaintiff's behavior during settlement *913 was well within the norms of reasonable conduct and did not, in any way, draw into question the procedural fairness by which the present consent decree was reached.
In a similar fashion, the present consent decree, while imperfect, in no way represents an "unreasonable" settlement of the dispute between plaintiff and settlors. The record indicates that the settlement, which was reached after long and hard-fought arm's length negotiation, fairly reflects the "relative strength of the parties' litigating positions" and "satisfactorily compensates the public for the actual (and anticipated) costs of remedial and response measures." Cannons, 899 F.2d at 89-90. The consent decree obligates settlors to pay $14.564 million dollars for past costs on top of the over $31 million dollars it must pay under the 1993 consent decree, figures which add up to about 68% of the total cost of remediation. Taking into account, among other things, the extraordinary amount of the settlement, the resources saved by settlement, the fact that settlement was hard fought, the fact that settlors compromised viable claims that their liability was significantly lower than the 68% they eventually agreed to, and the risk that the public may come up empty handed without the settlement, I conclude that the parties' decision to enter into it was reasonable.
I also conclude that the present consent decree furthers the objectives of CERCLA to encourage settlement and secure prompt cleanup. As noted by the United States Court of Appeals for the Sixth Circuit in Akzo Coatings, supra, the legislative intent behind CERCLA is "to ensure prompt and efficient cleanup of hazardous waste sites and to place the costs of those cleanups on PRPs." 949 F.2d at 1416-1417. The 1993 consent decree between plaintiff and settlors certainly went far in ensuring that both of these goals were met. The present consent decree likewise accomplishes these goals. The money received from settlors to reimburse the Superfund will assist EPA in its efforts to promptly and efficiently clean hazardous waste sites. Moreover, the money received comes appropriately from some of the parties responsible for the landfill's problems.

IV. CONCLUSION

The parties who have objected to this consent decree raise a number of arguments that they claim call the decree's validity into question. However, the arguments, if believed, strike more directly at an undeniable truth: in any complex set of multilateral negotiations there are bound to be disappointed parties. Federal courts do not have the resources or the authority to intervene in every instance where such disappointment occurs. In the words of the district court deciding Rohm & Haas:
It may be that there are certain circumstances in which a de minimis settlement is so grossly inadequate that the blatant unfairness to the non-settling parties and the rough requirements of justice would cause a court to hesitate before entering such a decree. But where the money settlement is shown to bear a reasonable relation to some plausible estimate, or range of estimates, of the settling parties' volumetric contribution, CERCLA requires that such a settlement be accepted and entered as a consent decree. Any unfairness to a nonsettlor ... is a byproduct of the congressional scheme, about which a court may do nothing in the absence of harm rising to a constitutional level.
Rohm & Haas, 721 F.Supp. at 687.
For the reasons stated above, I find no such harm and APPROVE the consent decree because it is fair, reasonable and promotes the interests of CERCLA.
IT IS SO ORDERED.
NOTES
[1] 42 U.S.C. § 9607.
[2] 42 U.S.C. § 9611.
[3] 42 U.S.C. § 9622.
[4] 42 U.S.C. § 9607(a).
[5] 42 U.S.C. § 9613(f)(2).
[6] This is a "discounted figure."
[7] This "orphan share" refers primarily to the share of hazardous waste attributable to firms that went out of business or do not have the present ability to pay their fair share of cleanup costs.
[8] This figure could increase. Under the 1993 consent decree, settlors agreed to complete the cleanup of the site. Plaintiff calculated that this agreement would impose liability upon settlors in the approximate amount of $31,265,000 on a discounted basis. This figure could increase (or decrease) if the cleanup goes better (or worse) than expected. Settlors, it should be pointed out, feel that their discounted liability under the 1993 consent decree is actually higher than the amount estimated by plaintiff.
[9] About 6.9 million of these gallons came from 18 of the 35 settlors.
[10] See also, 42 U.S.C. § 9622(a) (CERCLA settlement provisions designed to "expedite remedial action and minimize litigation.")