UNITED STATES of America, Plaintiff,

v.

ACORN ENGINEERING COMPANY; Aerosol Services Company, Inc.; BCY Industrial Enterprises; DWM Properties, LLC; Howard LIM, Walter LIM, Sylvia LIM, and Nancy LIM; Goe Engineering Co., Inc.; Hexcel Corporation; Lansco Die Casting, Inc.; C. Roy Herring, individually and as Trustee of the Miriam Herring Trust; Herring Investments, LLC; Masco Building Products Corp.; Saltire Industrial, Inc. (f/k/a Scovill, Inc.); Daniel Saparzadeh; Somitex Prints of California, Inc.; Union Pacific Railroad Company; and Utility Trailer Manufacturing Company, Defendants.

No. CV 03–5470 WJR(FMOx).

United States District Court,
C.D. California.

March 19, 2004.

Elizabeth F. Kroop, U.S. Department of Justice, Washington, DC, Suzette Clover, AUSA–Office of U.S. Attorney, Los Angeles, CA, for Plaintiff.

Gene A. Lucero, Richard Scott Pearson, Latham & Watkins, Daniel Romano, Daniel Romano Law Offices, Charles H. Pomeroy, IV, McKenna, Long & Aldridge, John J. Allen, Allen, Matkins, Leck, Gamble & Mallory, Patricia M. O'Toole, O'Toole Law Firm, Los Angeles, CA, Susan Shumway, Shumway & Spencer, Westport, CT, for Defendants.

## ORDER DENYING CARRIER CORPORATION'S MOTION TO INTERVENE

REA, District Judge.

After considering the materials submitted by the parties, argument of counsel, and the case file, the Court hereby DENIES Carrier Corporation's Motion to Intervene.

## I. FACTUAL BACKGROUND

The Puente Valley Operable Valley ("Valley") of the San Gabriel Superfund Site in Los Angeles County is the area of groundwater contaminated by hazardous substances that are located within the Puente Valley groundwater basin. The Valley is situated mostly within the City of Industry.

In May of 1993, the Environmental Protection Agency ("EPA") issued special notice letters to 58 individuals and entities, including nearly all Defendants, deemed by the EPA to be potentially responsible parties ("PRPs") under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), for volatile organic substances found in the Valley's groundwater. The parties were mailed notices based on their association with facilities in the area (i.e., ownership and/or operation). The letters advised Defendants that the EPA considered them potentially responsible for the release or threatened release of hazardous substances in the Valley.

In response, in September of 1993, 42 of the letter recipients, including Carrier Corporation ("Carrier"),[1] formed the Puente Val-

---

1. Carrier owned and operated a facility within the Valley until 1996, which was located approximately three and one half miles southeast of the water supply wells in the Valley's mouth. In 1995, Carrier discovered a release of a contaminant at its facility, notified the appropriate government authorities, and subsequently installed a groundwater purification system which, to this day, treats contaminated groundwater as far as 5,000 feet southeast of the facility. Carrier has,

ley Steering Committee ("the Committee") and entered into an Administrative Order on Consent with the EPA to perform the remedial investigation and feasibility study ("RI/FS") for the Valley. The Committee completed an RI report, and the EPA issued an FS report on May 30, 1997.

As a result of the reports, the EPA made several significant findings, including that the regional groundwater contamination at the Valley impacted two separate groundwater conduits (the shallow and intermediate zones), each of which would be addressed in the remedy. In September of 1998, the EPA issued an Interim Record of Decision for the Valley ("Decision"). The Decision set forth the EPA's remedy for the groundwater cleanup. The Decision called for a cleanup at the Valley's mouth for both the shallow and intermediate zones.

On September 28, 2000, the EPA issued another round of notice letters to the PRPs, requesting that the parties participate in negotiations to conduct the cleanup of the Valley. Utilizing the special notice and settlement procedures set forth in section 122(e) of CERCLA, the EPA notified all PRPs that they had 60 days to coordinate with each other to present the EPA with a good faith offer to conduct or finance the cleanup. As a result, the PRPs engaged in discussion on how to respond to the EPA. During the discussions, Carrier withdrew from the Committee because Carrier believed that it had already incurred substantial costs in rectifying the groundwater contamination that it previously caused.

In December of 2000, the parties to the Committee, without Carrier, made an offer to the EPA to perform and/or pay for a portion of the cleanup response costs, to pay a portion of future response costs, and to pay a portion of past response costs (the "Consent Decree").

In September of 2001, the EPA issued Carrier an Administrative Order for Remedial Design and Remedial Action (the "Order"), which required Carrier to design and imple-

ment the remedial action selected in the Decision. Finding the Order unwarranted, Carrier submitted a "Statement of Sufficient Cause" to the EPA, objecting to its terms.

Subsequently, the United States filed this complaint, seeking an order compelling the PRPs to implement the mouth-of-the-valley remedy contained in the Decision and seeking judicial approval of the Consent Decree, which excuses all Defendants from having to implement any part of the Decision and confers on them protection from claims for contribution from Carrier or any other party.

The United States commenced this action on July 31, 2003 by filing a complaint against Defendants seeking (1) performance of Defendants of response actions necessary to abate and release or threat of a release of hazardous substances at the Puente Valley Operable Valley of the San Gabriel Superfund Site in Los Angeles County; (2) reimbursement by Defendants of certain costs incurred by the EPA and the United States Department of Justice ("USDOJ") for response actions at the Site; and (3) performance by Defendants of certain actions necessary to alleviate an imminent or substantial danger to public health or the environment. The first and second claims are sought pursuant to Sections 106 and 107 of CERCLA, and the third claim is sought pursuant to Section 7003 of the Resource Conservation and Recovery Act ("RCRA").

Carrier now seeks to intervene in this action because Carrier asserts that it has interests in the subject matter of the action that are not adequately represented by any party, and the disposition of the action without Carrier may impair or impede Carrier's ability to protect those interests.

## II. DISCUSSION

### (A) Legal Standard

Carrier asserts that it may intervene as of right pursuant to both Federal Rule of Civil Procedure 24(a)(2) and Section 113(i) of CERCLA, 42 U.S.C. § 9613(i) (1980). Fed-

---

therefore, incurred substantial costs over the years, which according to Carrier, rendered entry into the settlement with the other Defendants disadvantageous. It should be noted that the

record reveals that all of the Defendants, who were officially designated PRPs by the EPA, incurred substantial pre-settlement costs. *See* Opposition at 4; Declaration of Gene A. Lucero.

eral Rule of Civil Procedure 24(a)(2) provides:

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed R. Civ. P. 24(a)(2). Furthermore, Section 113(i) of CERCLA provides:

In any action commenced under this chapter ... in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impeded the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. Section 9613(i).

■ Under both provisions, the party seeking intervention must satisfy a four part test:

(1) the party's motion must be timely; (2) the party must assert an interest relating to the property or transaction which is the subject of the action; (3) the party must be so situated that without intervention the disposition of the action, may, as a practical matter, impair or impede its ability to protect its interest; and (4) the party's interest must not be adequately represented by other parties.

*State of Arizona v. Motorola, Inc.,* 139 F.R.D. 141, 144 (D.Ariz.1991). "The only distinction between the two provisions is the difference in the burden of proof regarding the fourth prong of the test." *United States v. Acton Corp.,* 131 F.R.D. 431, 433 (D.N.J. 1990); *see also United States v. Union Electric,* 64 F.3d 1152, 1157 (8th Cir.1995). Un-

der Federal Rule of Civil Procedure 24(a)(2), the party seeking intervention must prove the fourth element, where as under Section 113(i) of CERCLA, the government has the burden of proof. *Acton* at 433. Lastly, it should be noted that the determination of intervention ultimately turns on the third prong, namely, whether the party seeking intervention has a sufficient "legally protectable interest." *Id; see infra,* intervention cases.

(B) Application to the Instant Case

(1) Carrier's Interests

Carrier asserts three legally protectable interests: (1) an interest in contribution; (2) an interest in cost recovery for response costs; and (3) an interest in judicial review of the EPA's RD/RA Order and Interim ROD. *See* Motion at 9–17. The Court rejects Carrier's attempt at separating the first two interests from each other, and instead finds that Carrier's contribution interest and cost recovery interest are actually one and the same. Carrier is indisputably a PRP, as are Defendants. The Ninth Circuit has decreed that "[b]ecause all PRPs are liable under the [CERCLA] statute, a claim by one PRP against another PRP necessarily is for contribution." *Pinal Creek Group v. Newmont Mining Corp.,* 118 F.3d 1298, 1301 (9th Cir. 1997). Simply labeling a claim as one for cost recovery under CERCLA section 107 does not make it one. *See id.; see also United States v. Colo. & E.R.R.,* 50 F.3d 1530, 1534–36 (10th Cir.1995) (stating that a PRP's CERCLA section 107 claim was actually a claim for contribution under CERCLA section 113(f)); *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir.1994)(same). Accordingly, the primary interest that Carrier seeks to protect with its motion to intervene is properly denominated a contribution interest. Carrier's contribution interest is the centerpiece of the instant dispute.[2]

(2) Analysis

The question of whether a non-settling PRP's contribution interest supports inter-

---

2. Carrier's third asserted interest, although not the interest fundamentally at issue, will be con-

sidered *infra.*

vention as of right under CERCLA § 113(i) or FRCP 24(a) has not yet been decided by the Ninth Circuit. A split in authority exists across the country, with the weight of the authority supporting non-intervention. *See United States v. ABC Industries,* 153 F.R.D. 603, 607 (W.D.Mich.1993); *State of Arizona v. Motorola,* 139 F.R.D. 141, 146 (D.Ariz. 1991); *United States v. Beazer East, Inc.,* 1991 WL 557609, *3 (N.D.Ohio 1991); *United States v. Cannons Engineering Corp.,* 899 F.2d 79, 91 (1st Cir.1990); *City of New York v. Exxon,* 697 F.Supp. 677, 694 (S.D.N.Y. 1988). But two courts have held that a non-settling PRP's contribution interest supports a right of intervention. *See United States v. Union Electric,* 64 F.3d 1152, 1168 (8th Cir. 1995); *United States v. Acton Corp.,* 131 F.R.D. 431, 434 (D.N.J.1990). After careful consideration, the Court is convinced that a non-settling PRP's contribution interest does not generate a right of intervention.

(a) Section 113(i) in relation to section 113(f)

Section 113(i) begins with the rather broad phrase, "any person may intervene as a matter of right when such person . . ." 42 U.S.C. § 9613(i). *See* full text, *supra.* Carrier argues that section 113(i)'s plain language reflects no limitation whatsoever on the class of persons entitled to intervention. While this may be true when section 113(i) is read in isolation, *but see* next section *below,* section 113(i)'s broad language appears to conflict with the specific contribution guidelines set forth in section 113(f), at least in the context of a motion to intervene by a non-settling PRP whose alleged protectable interest is a right to contribution. Section 113(f)(2) insulates settling PRPs from contribution claims regarding matters addressed in the settlement, while section 113(f)(3)(B) guarantees these settling PRPs the right to seek contribution from non-settling PRPs. Section 113(f)(3)(A) allows the government to bring an action against any persons who fail to resolve their liability via settlement. The potential liability of these non-settlors, however, is reduced by the amount of any settlements relating to the matter. *See* Section 113(f)(2).

To the extent that section 113(i) might be interpreted as without limitation on its face,[3] it plainly conflicts with section 113(f) when a non-settling PRP seeks 113(i) intervention in order to protect its contribution interest. Carrier's primary reason for seeking intervention, which is potentially authorized by section 113(i)'s broad language, is to protect its interest in bringing contribution claims against the settling PRPs.[4] Yet section 113(f) expressly grants settling PRPs immunity from contribution claims. Thus, there exists an obvious tension, if not direct conflict, between sections 113(i) and 113(f).[5]

It is black-letter law that "individual sections of a single statute should be construed together." *Erlenbaugh v. United States,* 409 U.S. 239, 244, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972). That is, it is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). "A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into an harmonious whole." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). *See also Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) ("a section of a statute should not be read in isolation from the context of the whole Act"); *United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1184 (6th Cir.1982) ("[a] statute

---

**3.** The Court assumes *arguendo* this interpretation of section 113(i) for purposes of the instant analysis only. *See infra.*

**4.** Nothing in section 113(f) precludes non-settling PRPs from asserting contribution claims against other non-settling PRPs; in fact, section 113(f)(1)'s broad contribution language authorizes such contribution. Thus, the only contribu-

tion claims of which non-settling PRPs will be deprived are those asserted against settling PRPs.

**5.** Simply put, section 113(i) allows intervention by anyone for any reason (according to Carrier), yet section 113(f) precludes non-settling PRPs from bring contribution claims against settling PRPs. The disharmony is obvious.

should be read and construed as a whole, and, if possible, given a harmonious, comprehensive meaning"). The Court believes that if section 113(i) and section 113(f) are analyzed in tandem and then construed in such a way as to render them maximally harmonized, section 113(i)'s right of intervention must not include the right of a non-settling PRP to intervene for purposes of a contribution claim against settling PRPs.[6] Carrier is therefore barred from intervening pursuant to section 113(i) in order to protect its contribution interest.[7]

### (b) Section 113(i) in isolation

Analyzing section 113(i) in isolation leads to the same result. The two cases that found intervention relied heavily on a plain language analysis. Both *United States v. Acton Corp.*, 131 F.R.D. 431, 433 (D.N.J.1990), and *United States v. Union Electric Co.*, 64 F.3d 1152, 1165 (8th Cir.1995), criticized other courts for inquiring into the legislative intent of CERCLA when section 113(i)'s terms are unambiguous.

▬ It is well-established that a court need not and ought not consider the legislative history of statute when the statute's terms are unambiguous. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). "The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *Id; see also North Dakota v. United States*, 460 U.S. 300, 312–13, 103 S.Ct. 1095, 1102–03, 75 L.Ed.2d 77 (1983) ("[w]hen interpreting statutory language, the court must first look to the plain meaning of the language"). When the language of a statute is plain, the inquiry ends

with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Ron Pair* at 241, 109 S.Ct. 1026. The plain meaning of a statute is decisive, "except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Id.* at 242, 109 S.Ct. 1026.

#### (i) Section 113(i)'s Ambiguous Language Triggers Inquiry Into Legislative Intent

The two courts to have found intervention in the instant scenario refused to consider legislative history, on the grounds that the section 113(i)'s language is plain and, therefore, dispositive. *Union Electric* stated:

> Here, CERCLA's intervention provisions unambiguously provide for intervention by "any person" when such person meets the requirements of the statute. (Citations omitted). There is no restriction on persons who have refused to settle claims and are seeking to intervene in consent decree litigation to preserve contribution claims under § 113(f)(1).

*Id.* at 1165. *See also Acton* at 433 ("the Court need not consider the legislative history of the CERCLA provisions, as the statute's terms are unambiguous...Section 113(i) gives the intervention rights to 'any person' who satisfies the section's requirements").

While the Court certainly agrees with the *Union Electric* and *Acton* courts with respect to the unambiguous nature of the initial language of section 113(i) (namely, the phrase "any person"), the Court is not satisfied that the subsequent language of section

---

**6.** While the Court believes that the tension or conflict between sections 113(i) and (f) can be resolved without resorting to legislative intent, it should be noted that such a resort would only further solidify this non-intervention conclusion. *See* legislative intent analysis, *infra*.

**7.** This construction is also in harmony with section 122(d)(2) of CERCLA, which expressly grants persons who are not named as parties the opportunity to lodge their objections to the proposed consent decree with the Attorney General, who is *mandated* to both consider and file with

the court "any written comments, views, or allegations relating to the proposed judgment." *See* 42 U.S.C. § 9622(d)(2); *see also* full citation and analysis of section 122(d)(2), *infra*. Thus, interpreting section 113(i) in relation to and in harmony with both section 113(f)(2) and section 122(d)(2) leads to a holding of non-intervention.

**8.** Carrier's motion to intervene pursuant to Fed. Rule Civ. Pro. 24(a) is obviously unaffected by section 113(f)'s prescriptions. Thus, the "legally protectable interest" analysis, below, is necessary.

113(i) is unambiguous.[9] This portion reads: "...when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest...." To say that this language is "plain" on its face is nothing short of absurd. While the meaning of this language can certainly be examined by reference to FRCP 24(a) case law, since this language was adopted *verbatim* from Rule 24(a), the Court does not believe that such an adoption renders the language "unambiguous" for statutory interpretation purposes. In other words, section 113(i)'s facial ambiguity justifies inquiry into legislative history, despite the existence of long-standing case law interpreting the language in the Rule 24(a) context.

Section 113(i)'s legislative history reveals that CERCLA's right of intervention was not intended to extend to non-settling PRPs seeking to protect a contribution interest. The House Report states that "any person may intervene as a matter of right when that person claims a direct public health or environmental interest in the subject of a judicial action allowed under this section, and when the disposition of the action may impede or impair the person's ability to protect that interest." H.R.Rep. No. 253(III), 99th Cong., 1st Sess. 24, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3038, 3047. Moreover, Representative Glickman explained that:

> [n]ew subsection 113(i) of CERCLA provides that any person may intervene as a matter of right when that person has a direct interest which is or may be adversely affected by the action, and the disposition of the action may, as a practical matter, impair or impede the person's ability

to protect that interest. When a motion to intervene is granted under this section, the intervenor shall only be able to raise issues relating to the selected remedy. Issues not directly related to the selection of remedy should not be entertained by the court because the purpose of review under new subsection 113 of CERCLA is only to resolve issues relating to the remedy. *Moreover, nothing in this provision is intended to make intervenors necessary parties to any consent decree referred to in this section or to interfere with the rights of the United States to enter into settlements with potentially responsible parties under this Act.*

131 Cong.Rec. H 11069 (December 5, 1985) (emphasis added). It is indeed clear that "the real persons who Congress were attempting to protect through enactment of Section 113(i) are those who live in close proximity to hazardous waste sites and who would, conceivably, be the most affected by proposed remedial schemes for cleaning up toxic waste dumps." *United States v. Beazer,* 1991 WL 557609, *3 (N.D.Ohio 1991).[10] The legislative history demonstrates that non-settling PRPs seeking intervention in order to undermine the consent decree and protect their contribution interests were specifically intended to be exempted from the coverage provided by section 113(i).

The general legislative intent behind CERCLA and the Superfund Amendment and Reauthorization Act ("SARA") also supports a holding of non-intervention. SARA, Pub.L. 99–499, 100 Stat. 1613, amended CERCLA in 1986.[11] Congress' intent in passing SARA was to ensure rapid and thorough cleanup of toxic waste sites. *See* H.R.Rep. No. 253, 99th Cong., 2d Sess. 55 *reprinted in* 1986 U.S.C.C.A.N. 2835, 2837;

---

9. It should be noted that neither of these courts stated that this subsequent language is unambiguous. Rather, the courts found only the phrase "any person" unambiguous and accordingly refused to inquire into the legislative history of the entire provision. This maneuver was erroneous, since the unambiguous nature of one portion of a provision, of course, does not render the entire provision unambiguous.

10. In light of this clear legislative history underlying section 113(i), a strong argument exists that a literal application of section 113(i) will produce

a result "demonstrably at odds with the intentions of its drafters." *See Ron Pair, supra.* If this were indeed the case, the intention of the drafters, rather than the strict language, controls. *Id.* While the Court believes that this argument has merit, the Court need not rely upon it.

11. It is well-accepted that "Congress designed CERCLA to encourage early settlement by parties potentially responsible for cleanup costs." *State of Arizona v. Motorola,* 139 F.R.D. 141, 145 (D.Ariz.1991).

*see also United States v. Alcan,* 25 F.3d 1174, at 1180 (3d Cir.1994). Because Congress believed it could never provide the EPA with adequate money or manpower, the new law [SARA] tried to maximize the participation of responsible parties in the cleanup. *Id.* The court in *In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, at 1028–29 (D.Mass.1989) stated:

> CERCLA was designed "to protect and preserve public health and the environment." That Congressional purpose is better served through settlements which provide funds to enhance environmental protection, rather than the expenditure of limited resources on protracted litigation. Without question, Congress passed the SARA amendments to encourage settlements for this very reason.

*Id.* CERCLA's statutory framework also reveals the clear Congressional intent to generate settlements. *Id.* at 1027 (section 113(f)(2)'s insulation from contribution "allows settling parties to pay their agreed settlement and end their involvement in costly litigation without 'fear that a later contribution action will compel them to pay still more money to extinguish their liability'"). Moreover, the "risk of disproportionate liability encourages parties to resolve their liability early, lest they be found responsible for amounts not paid by settling defendants." *Motorola* at 145.[12]

The Court hereby holds that allowing non-settling PRPs such as Carrier to intervene as of right would undermine the clear Congressional intent behind CERCLA and SARA to generate early and efficient settlement, rather than prolonged and expensive litigation. The *Beazer* Court put it well:

> This Court finds…that Beazer[13] does not qualify as a person who has a right to intervene under section 113(i) of CERC-

LA. If this were not the case, parties such as Beazer could refuse to engage in meaningful settlement negotiations regarding clean up and response costs of a hazardous waste site. Then, at the point when a large number of PRPs had agreed to a proposed settlement and such a settlement was ready for the court's approval, a non-settling party could intervene in the action, cause delays in implementation of the clean up of the hazardous waste site, and effectively thwart the settlement process.

*Id.* at *4. *See also United States v. Mid–State Disposal, Inc.,* 131 F.R.D. 573 (W.D.Wis.1990) (denying non-settling PRP's motion to intervene because allowing intervention would "render the negotiations between the original parties a waste of time and stall the implementation of the remedy designed to benefit the public health and safety at the site"); *Motorola* at 146 (stating that would-be intervenors "are unwilling or unable to settle. Yet they wish to be able to object to the settlement of other parties. This court will not allow [would-be intervenors] to frustrate the settlement process simply because there is a possibility that they may bear a disproportionate liability of the cleanup costs").[14] Because a right of intervention under section 113(i) for non-settling PRPs seeking to disrupt the consent decree and protect their contribution interests would fly in the face of Congress' clear intent in enacting CERCLA and SARA, Carrier's motion must be denied.

> #### *(ii) Assuming Arguendo No Ambiguity, Non–Intervention Nonetheless Results*

Even if section 113(i)'s language is sufficiently "plain" to prohibit this Court from resorting to legislative history, a holding of non-intervention must nonetheless re-

---

**12.** The risk of disproportionate liability was deliberately built into section 113(f)(2), since the non-settlors are potentially liable for the difference between the damages and the settlement, even if the settlors paid less than their proportionate share of the liability. *Motorola* at *id.*

**13.** Beazer was the non-settling PRP seeking to intervene to protect its contribution interest.

**14.** The *Motorola* court added: "Congress explicitly created a statutory framework that left non-settlors at risk of bearing a disproportionate

amount of liability." *Id.,* citing *United States v. Cannons Engineering Corp.,* 899 F.2d 79, 91 (1st Cir.1990). "To the extent that the non-settling parties are disadvantaged in any concrete way by the applicability of section 113(f)(2) to the overall settlement, their dispute is with Congress." *Id.,* citing *New York v. Exxon Corp.,* 697 F.Supp. 677, 694 (S.D.N.Y.1988). "In short, the Court believes that allowing intervention in this matter would only frustrate CERCLA policy and, in effect, eliminate CERCLA's statutory incentive for settlement." *Motorola* at 146.

sult, due to Carrier's inability to establish a sufficient "legally protectable interest." [15]/[16] Intervention as of right requires a "direct, substantial, legally protectable interest in the proceedings." *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir.1987). To constitute a legally protectable interest, "the interest must be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *New Orleans Public Service v. United Gas Pipe Line*, 732 F.2d 452, 464 (5th Cir.1984) (emphasis in original); *Motorola* at 146; *Beazer* at *5. Moreover, that interest cannot be contingent or speculative, *Motorola* at 146; *Beazer* at *5, or merely economic.

▮ Various courts have held that the contribution interest of a non-settling PRP to be insufficient as a matter of law. *See Motorola* at 146 (interest is "at most a contingency," and not "substantial" or "legally protectable"); *ABC Industries* at 607 (interest is "indirect" and "not 'significantly protectable' "); *Beazer* at *5 (interest is "at present a contingency, and is not something which it owns"); *Alcan* at 1184 (interest is "merely contingent," in *dicta* ). Courts have also held the opposite. *See Union Electric* at 1166 (interest is direct, substantial and legally protectable, as well as *statutory* and not merely economic, since CERCLA authorizes

claims for contribution); *Acton* at 434 (same). While the Court believes the contribution interest of a non-settling PRP is indirect and contingent under the reasoning set forth in *Motorola, ABC Industries, Beazer* and *Alcan*,[17] the Court also believes the interest is "not one that the *substantive* law recognizes as belonging to or being owned by the applicant." *New Orleans Public Service* at 464. The *Union Electric* court held that this interest is statutory and recognized by the substantive law because CERCLA provides for a generalized right to contribution under section 113(f)(1). *Id.* at 1167. The Court respectfully rejects this analysis and, instead, holds that a non-settling PRP's contribution interest is not only *unrecognized* by the substantive law, but is also expressly *prohibited* by the substantive law, namely, by section 113(f)(2).[18] The interest is thus rendered merely economic, rather than statutory, *see Beazer* at *5, and is insufficient to support intervention as of right. Carrier is therefore not entitled to intervention as of right, due to its failure to establish a sufficient "legally protectable interest." [19]

### (c) Remaining Issues

#### (i) Section 122(d)(2)

The Court emphasizes that the proper avenue for Carrier to voice its objections to the

**15.** This analysis is probably necessary, even assuming that Carrier is not entitled to intervention under section 113(i), since Carrier also moves for intervention pursuant to FRCP 24(a).

**16.** Whether it be intervention under CERCLA § 113(i) or FRCP 24(a)(2), a party seeking to intervene must establish a "legally protectable interest." *See United States v. ABC Industries*, 153 F.R.D. 603, 607 (W.D.Mich.1993).

**17.** The *Alcan* court determined that the contribution interest of a *settling* PRP is sufficiently direct and non-contingent to support intervention as of right: "Unlike the interest of an applicant who has not yet settled, which is contingent in the sense that it may never ripen, the interest of an applicant who has already settled is contingent only in the sense that it cannot be valued. However, the fact that the interest cannot be valued does not mean it does not exist. *The act of settling transforms a PRP's contribution right from a contingency to a mature, legally protectable interest.*" *Id.* at 1184. (Emphasis added). Comparing the contribution interest of a non-settling PRP with that of a settling PRP accentuates the legal insufficiency of the former.

**18.** An interest in contribution against settling PRPs can hardly be denominated "statutory" or "recognized by the substantive law" when it is explicitly barred by a specific statutory provision. *See* § 113(f)(2). Indeed, the statutory language and framework of CERCLA and SARA unequivocally generate the risk of disproportionate liability for non-settling PRPs that cannot be cured by contribution claims against settling PRPs. *See id.; United States v. Cannons Engineering Corp., supra* at 91 ("Congress explicitly created a statutory framework that left non-settlors at risk of bearing a disproportionate amount of liability"); *New York v. Exxon Corp., supra* at 694 ("[t]o the extent that the non-settling parties are disadvantaged in any concrete way by the applicability of section 113(f)(2) to the overall settlement, their dispute is with Congress").

**19.** The Court also denies Carrier's alternative motion for permissive intervention, as the Court believes, for the reasons set forth above, that Carrier's intervention will unduly delay and prejudice the pending adjudication and the rights of the settling PRPs, as well as those of the EPA and the public. *See Motorola* at 146.

proposed consent decree is not through intervention in the instant case, but rather through the specific safeguards of CERCLA section 122(d)(2). Section 122(d)(2) provides, in pertinent part:

> [t]he Attorney General shall provide an opportunity to persons who are not named as parties to the action to comment on the proposed judgment before its entry by the court as a final judgment. The Attorney General shall consider, and file with the court, any written comments, views, or allegations relating to the proposed judgment. The Attorney General may withdraw or withhold its consent to the proposed judgment if the comments, views, and allegations concerning the judgment disclose facts or considerations which indicate that the proposed judgment is inappropriate, improper, or inadequate.

42 U.S.C. § 9622(d)(2).[20] The Court must then determine whether the proposed consent decree is fair, reasonable, and consistent with CERCLA. *See,* e.g., *United States v. Cannons* at 87. If it is not, the Court *must* deny the proposed consent decree. *Id.* If section 122(d)(2) had not been included in CERCLA, and if the Court were not required to scrutinize the proposed consent decree, this would be a different case. These crucial protections guaranteed to non-settling PRPs, however, further render the alleged right to intervention unwarranted and misplaced.

### (ii) Carrier's interest in judicial review

Carrier also claims an interest in challenging the remedy it was ordered to implement, as set forth in the RD/RA Order and the Interim ROD, and that this interest justifies intervention. Carrier is mistaken not only because its RD/RA Order is not even before this Court, but also because CERCLA's pre-enforcement bar would deprive this Court of jurisdiction to hear the challenge to the remedy if it were before the Court. *See* 42 U.S.C. § 9613(h). Section 113(h) states in relevant part that "[n]o Federal court shall have jurisdiction under Federal law...to review any challenges to removal or remedial

action selected" by the EPA under CERCLA sections 104 and 106. *Id.* The pre-enforcement bar "sets forth the jurisdictional basis and limits of federal courts to adjudicate actions arising out of CERCLA." *Fairchild Semiconductor Corp. v. U.S. Envtl. Prot. Agency,* 984 F.2d 283, 286 (9th Cir.1993). The pre-enforcement bar "amounts to a blunt withdrawal of federal jurisdiction." *McClellan Ecological Seepage Situation v. Perry,* 47 F.3d 325, 328 (9th Cir.1995) (internal quotation marks omitted).

> The purpose of the [pre-enforcement bar] is to prevent private responsible parties from filing dilatory, interim lawsuits which have the effect of slowing down or preventing EPA's cleanup activities. By limiting court challenges to the point in time when the agency has decided to enforce the liability of such private responsible parties, the amendment will ensure both that effective cleanup is not derailed and that private responsible parties get their full day in court to challenge the agency's determination that they are liable for cleanup costs.

James J. Florio, et al., Separate and Dissenting Views—Superfund Amendments of 1985 (H.R.2817), H.R.Rep. No. 99–253(I), at 266 (1985), U.S.Code Cong. & Admin.News 1985, 2835, 2941; *see also Hanford Downwinders Coalition, Inc. v. Dowdle,* 71 F.3d 1469, 1474 (9th Cir.1995) (stating that Congress enacted the pre-enforcement bar "to ensure that cleanup efforts would not be delayed by litigation").

Defendants accurately label Carrier's argument as "confused." *See* Opposition at 22:1. Although the pre-enforcement bar does not operate when the United States brings CERCLA sections 106 and 107 actions against a PRP, the United States has brought no such action against Carrier. But for its attempted intervention as a defendant, Carrier would not be a party to this action and thus cannot claim that the United States has taken action under CERCLA section 106 or 107 to enforce the RD/RA Order against Carrier. Furthermore, Carrier cannot pre-

---

**20.** The Court notes that in the present case Carrier had the opportunity to lodge its objection with the Attorney General and has, in fact, exercised its right.

cipitate an enforcement action against itself by its attempted intervention in this matter as a defendant. *See* 42 U.S.C. §§ 9613(h)(1), (2); *see also Fairchild Semiconductor Corp. v. U.S. Envtl. Prot. Agency*, 769 F.Supp. 1553, 1558 (N.D.Cal.1991) (stating that *only* enforcement actions "brought by EPA fall within the exception"), *aff'd*, 984 F.2d 283 (9th Cir.1993). The Court agrees with Defendants that to hold otherwise would create an unexpected and significant new exception to the section 113 pre-enforcement bar, causing the precise type of litigation delay that Congress sought to bluntly defeat. *See* Opposition at 22. Accordingly, the pre-enforcement bar remains in place as to Carrier's RD/RA Order, the Court has no jurisdiction to review it, and this alleged interest cannot support intervention.[21]

## CONCLUSION

For the foregoing reasons, Carrier's Motion to Intervene is hereby DENIED.

IT IS SO ORDERED.

21. Towards the end of its twenty-five page Motion, Carrier throws in a claim of unconstitutionality. *See* Motion at 21–22. Carrier spends about a page and a half on the argument and merely recites the broad principles and elements underlying the due process and takings clauses, without even citing a case relating to CERCLA's constitutionality. *Id.* Defendants accurately characterize this maneuver as "Carrier's 'kitchen sink' argument." Opposition at 24:28. Moreover, Defendants' Opposition offers constitutional analysis specifically relating to CERCLA, *see Dickerson v. Administrator, EPA*, 834 F.2d 974, 978 fn. 7 (11th Cir.1987), *Broward Gardens Tenants Ass'n v. U.S. Envtl. Prot. Agency*, 311 F.3d 1066, 1075 (11th Cir.2002), *Jach v. Am. Univ.*, 245 F.Supp.2d. 110, 114–117 (D.D.C.2003), and soundly refutes Carrier's feeble claim. Because the Court agrees with Defendants that Carrier's constitutional rights are adequately safeguarded by CERCLA, Carrier's claim is denied.