**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA;
CALIFORNIA DEPARTMENT OF TOXIC
SUBSTANCES CONTROL,
　　　　　　　*Plaintiffs-Appellees,*

APW NORTH AMERICA; CARDINAL
INDUSTRIAL FINISHES; EEMUS
MANUFACTURING CORP.;
INTERNATIONAL MEDICATION
SYSTEMS, LTD.; NORF JAMES JEBBIA
TESTAMENTARY TRUST; ROC-AIRE
CORPORATION; JANNEBERG MARITAL
TRUST; SMITTYBILT, INC.; SOUTHERN
CALIFORNIA EDISON COMPANY;
ANDRUSS FAMILY TRUST,
　　　　　　　*Defendants-Appellees,*

　　　　　　　v.

AEROJET GENERAL CORP.; ART
WEISS, INC.; ASTRO SEAL, INC.; DEL
RAY INDUSTRIAL ENTERPRISES, INC.;
SHELLEY LINDERMAN, as Trustee of
the Linderman Trust; M & T
COMPANY; MULTI CHEMICAL
PRODUCTS INC.; QUAKER CHEMICAL
CORPORATION; TIME REALTY
INVESTMENTS INC.; DON TONKS;
ROY TONKS; TONKS PROPERTIES;
ART WEISS,
　　　　　　　*Intervenors-Appellants.*

No. 08-55996

D.C. No.
2:07-cv-06873-
ABC-RC

OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, Chief District Judge, Presiding

7825

Argued and Submitted
October 5, 2009—Pasadena, California

Filed June 2, 2010

Before: Cynthia Holcomb Hall, William A. Fletcher and
Richard R. Clifton, Circuit Judges.

Opinion by Judge William A. Fletcher

**COUNSEL**

M. Alice Thurston, Lisa Elizabeth Jones, US DEPARTMENT OF JUSTICE, Washington, D.C., Elizabeth Ann Rushton,

OFFICE OF THE CALIFORNIA ATTORNEY GENERAL, Los Angeles, California, for the plaintiffs-appellees.

Brian Donald Langa, DEMETRIOU, DEL GUERCIO, SPRINGER & FRANCIS, Los Angeles, California, Catherine Mitchell Wieman, Peter A. Nyquist, ALSTON & BIRD, Los Angeles, California, Robert Stephen Niemann, SEYFARTH SHAW, San Francisco, California, Carla Margolis Blanc, SOUTHERN CALIFORNIA EDISON COMPANY, Rosemead, California, for the defendants-appellees.

James Carlyle Macdonald, Thomas Jay Bois, II, BOIS & MACDONALD, Irvine, California, Bradley L. Bunch, LAW OFFICES OF McCOLLUM & BUNCH, Fresno, California, Stephen Robert Onstot, WALSWORTH FRANKLIN BEVINS & McCALL, Los Angeles, California, Stephen Arthur Tuggy, LOCKE LORD BISSELL & LIDDELL, Los Angeles, California, Lawrence Allen Hobel, COVINGTON & BURLING, San Francisco, California, for the intervenors-appellants.

---

## OPINION

W. FLETCHER, Circuit Judge:

The Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675 ("CERCLA"), requires certain polluters to pay for cleaning up contaminated sites. After identifying a contaminated site, the federal Environmental Protection Agency ("EPA") and state environmental agencies typically negotiate with potentially responsible parties ("PRPs") over their shares of comparative responsibility for cleanup ("response") costs. CERCLA allows PRPs to seek contribution from one another in order to apportion response costs equitably. But CERCLA bars contribution claims against PRPs that have obtained administratively or judicially approved settlements with the government.

CERCLA thus provides an incentive for PRPs to settle by leaving non-settling PRPs liable for all of the response costs not paid by the settling PRPs.

We consider a question that has split the federal courts: May a non-settling PRP intervene in litigation to oppose a consent decree incorporating a settlement that, if approved, would bar contribution from the settling PRP? We join the Eighth and Tenth Circuits in holding that the answer is "yes."

## I.   Background

### A.   Investigation and Negotiation

The San Gabriel Basin is a groundwater reservoir in eastern Los Angeles County that serves as a source of drinking water for more than one million people. In 1979, the EPA discovered groundwater contamination in the basin. In 1984, it designated much of the basin as a site on the CERCLA National Priorities List for investigation and cleanup. The EPA divided the site into eight "Operable Units." The South El Monte Operable Unit ("SEMOU") covers approximately eight square miles in the south central portion of the San Gabriel Basin.

The EPA's initial investigation determined that SEMOU groundwater contained volatile organic compounds ("VOCs") that required containment and remediation. Throughout the 1990s, the EPA sent Notice of Liability Letters to PRPs, requesting that they participate in a Remedial Investigation and Feasibility Study ("RI/FS"). Thirty-three PRPs participated in the RI/FS process. By 1999, the EPA had completed the RI/FS and had identified numerous industrial facilities in the SEMOU that were potential sources of the VOCs.

In September 2000, the EPA issued an Interim Record of Decision ("IROD") based on the RI/FS. The IROD prescribed a 30-year remedial plan to clean contaminants from the groundwater and stop their spread. As part of the plan, local

water providers ("Water Entities") would pump the contaminated water, clean the water, and then sell the treated water to their customers. The EPA projected the estimated cost of VOC cleanup at $14 million, plus an additional $14 million for costs incurred by the state and federal governments.

In March 2002, the EPA sent Special Notice Letters pursuant to § 122(e) of CERCLA, 42 U.S.C. § 9622(e), to 67 PRPs it had identified as current or former owners or operators of facilities in the basin that had used hazardous substances. The letters asked the PRPs to present good faith offers to comply with the IROD remedial plan and to pay the EPA's past costs in the SEMOU.

In the meantime, the Water Entities sought to require the PRPs to pay for the water treatment response costs. After lengthy negotiations, in July 2002 the Water Entities and thirteen PRPs ("Group of 13") entered into an agreement ("G13 Agreement"). The G13 Agreement provided that the Group of 13 would pay $4.7 million to fund VOC cleanup in exchange for a standstill agreement under which the Water Entities would agree not to bring suit against the group during the period that the funds were being used. The Water Entities also agreed to "use good faith efforts" to support efforts of the Group of 13 to obtain an approved settlement that would bar contribution claims by other PRPs against Group of 13 members.

On August 28, 2003, the EPA issued a unilateral administrative order to 41 PRPs that had not yet entered into agreements or made good faith offers, requiring each of them to take remedial action.

The remedial plan contained in the 2000 IROD addressed only VOC contamination. Soon after the issuance of the IROD, the EPA detected perchlorate in SEMOU groundwater at concentrations higher than the state's drinking water advisory levels. In 2005, the EPA issued an Explanation of Signif-

icant Differences ("ESD") to update the IROD remedial plan to address perchlorate contamination.

By 2007, estimated response costs had increased substantially. The EPA's VOC response cost estimate had increased from $14 million to $26 million. The ESD estimated an additional $46 million for perchlorate remediation. The estimated costs incurred by the state and federal governments had also increased from $14 million to $15 million. The total cost to clean up VOC and perchlorate contamination in the SEMOU groundwater was now estimated at $87 million.

### B.   Suits by the Water Entities (*SEMOU Cases*)

While they were negotiating the agreement with the Group of 13, the Water Entities filed four suits in the Central District of California against other PRPs (the *SEMOU Cases*).[1] On March 31, 2003, the district court consolidated the four cases.

Under the terms of the G13 Agreement, the Water Entities could not sue the Group of 13. However, the PRP defendants in the *SEMOU Cases* were not so bound. The defendants filed third-party complaints against the Group of 13, as well as against other PRPs not sued by the Water Entities. Their third-party complaints sought contribution from the Group of 13 and the other PRPs. The defendants also filed counterclaims against the Water Entities. The district court appointed a Special Master to facilitate settlement. In October 2004, the district court stayed discovery while the parties focused on settlement discussions.

---

[1]The *SEMOU Cases* are: *San Gabriel Basin Water Quality Authority v. Aerojet-General Corp.*, No. CV 02-4565; *San Gabriel Valley Water Co. v. Aerojet-General Corp.*, No. CV 02-6346; *Southern California Water Co. v. Aerojet-General Corp.*, No. CV 02-6340; *City of Monterey Park v. Aerojet-General Corp.*, No. CV 02-5909.

### C.   Agreement among the EPA, the Water Entities, and the Group of 10

In March 2007, ten PRPs from the Group of 13 ("Group of 10") entered into an agreement with the Water Entities, the EPA, and the state ("G10 Agreement"). The Group of 13 had become the Group of 10 when two members applied success-fully for "ability to pay" status, *see* CERCLA § 122(g)(7), 42 U.S.C. § 9622(g)(7), and a third member declined to partici-pate. The Group of 10 agreed to provide an additional $3.4 million to pay for cleanup of perchlorate contaminants in the SEMOU.

### D.   Appeal in This Case

In October 2007, the EPA filed a suit in the Central District of California against the Group of 10, lodging a proposed consent decree incorporating both the G13 Agreement of 2002 and the G10 Agreement of 2007. The consent decree, if approved by the court, would protect the Group of 10 from contribution claims by non-settling PRPs. The PRP defen-dants in the *SEMOU Cases* were not parties to the EPA's suit.

The Department of Justice published notice of the proposed consent decree in the Federal Register on November 8, 2007 and provided a thirty-day public comment period. *See* Notice of Lodging of Two Consent Decrees, 72 Fed. Reg. 63,185 (Nov. 8, 2007). A group of PRPs, including most of the defendants in the *SEMOU Cases*, submitted comments object-ing to the proposed consent decree. We will call this group "Applicants." Applicants did not include any of the Group of 13 or the Group of 10. Applicants complained that the EPA had not provided sufficient information about the proposed consent decree's allocation of cleanup costs. Applicants fur-ther complained that they were "unaware as to whether [a Non-Binding Preliminary Allocation of Responsibility] has been prepared by EPA." In December 2007, Applicants sub-

mitted Freedom of Information Act requests to the EPA. They received some information in response on February 19, 2008.

In March 2008, Applicants moved to intervene as of right in the EPA's suit against the Group of 10 under Federal Rule of Civil Procedure 24(a)(2) and § 113(i) of CERCLA, 42 U.S.C. § 9613(i). The district court denied intervention and entered the consent decree the next day.

The Applicants timely appealed, contending that the district court erred in denying their motion to intervene as of right under Rule 24(a)(2) and § 113(i). That appeal is before us in this case.

### E.    Appeal in the *SEMOU Cases*

In the *SEMOU Cases*, plaintiff Water Entities and third-party defendants Group of 10 requested a judicial order in May 2008 approving a proposed settlement between plaintiffs and third-party defendants that mirrored the proposed consent decree in the EPA's suit against the Group of 10. Defendants in the *SEMOU Cases* included the Applicants who had sought to intervene to oppose the proposed consent decree in the suit brought by the EPA against the Group of 10. The district court in the *SEMOU Cases* entered judgment approving the settlement, dismissing with prejudice all claims against the Group of 10, and barring any claims for contribution by non-settling PRPs. Five of the defendants (all of whom are Applicants for intervention in the suit brought by the EPA) appealed. That appeal is before us in a separate case. By separate order filed today, we vacate the district court's judgment in the *SEMOU Cases* and remand for further proceedings consistent with this opinion. *See San Gabriel Basin Water Quality Auth. v. Linderman*, No. 08-56589.

### II.    Standard of Review

We review de novo a district court's denial of a motion to intervene as of right, except for the court's determination of

timeliness, which we review for abuse of discretion. *United States v. Alisal Water Corp.*, 370 F.3d 915, 918-19 (9th Cir. 2004); *Calif. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1118-19 (9th Cir. 2002).

## III. Discussion

The Applicants seek to intervene as of right under both Federal Rule of Civil Procedure 24(a)(2) and § 113(i) of CERCLA. We require applicants for intervention as of right pursuant to Rule 24(a)(2) to meet a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). "In determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *Alisal*, 370 F.3d at 919.

Section 113(i) of CERCLA provides a right to intervene in almost identical terms to Rule 24(a)(2):

> In any action commenced under this chapter or under the Solid Waste Disposal Act in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the dispo-

> sition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. § 9613(i). The two provisions differ only in providing a different burden of proof for the fourth part of the test. Under Rule 24(a)(2), the burden of showing inadequate representation is on the applicant; under § 113(i), to avoid intervention, the government must show that the applicant's interests are adequately represented. *Commercial Realty Projects*, 309 F.3d at 1118-19.

We consider the four parts in turn.

### 1. Timeliness

The parties do not dispute the timeliness of the Applicants' motion to intervene. Applicants acted promptly after learning of the proposed consent decree. They submitted comments, filed Freedom of Information Act requests, and ultimately moved to intervene, all within a span of four months.

### 2. Significantly Protectable Interest

An applicant for intervention must have a "significantly protectable interest," meaning that "(1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Lockyer*, 450 F.3d at 440-41 (citation and internal quotation marks omitted). Applicants here seek to intervene to protect their rights to contribution under CERCLA, and to ensure that the consent decree embodies a fair and reasonable allocation of liability.

**[1]** By its plain language, CERCLA provides to a non-settling PRP a statutory right to contribution from other PRPs.

Section 113(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1). Courts are instructed to resolve contribution claims by allocating "response costs among liable parties using such equitable factors as the court determines are appropriate." *Id.* Section 113(f)(2), however, makes the right of contribution unavailable against any PRP that enters into an approved settlement with "the United States or a State":

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9613(f)(2).

**[2]** Only two circuits, the Eighth and the Tenth, have considered whether non-settling PRPs may intervene in litigation that threatens to cut off their rights to contribution under § 113(f). Both circuits have held that such PRPs have interests sufficient to support intervention as of right. *See United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386 (10th Cir. 2009); *United States v. Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995). District courts have split on the question. *Compare United States v. Acorn Eng'g Co.*, 221 F.R.D. 530, 534-39 (C.D. Cal. 2004) (holding interest not legally sufficient to support intervention as of right), *United States v. ABC Indus.*, 153 F.R.D. 603, 607-08 (W.D. Mich. 1993) (same), *and Arizona v. Motorola, Inc.*, 139 F.R.D. 141, 145-46 (D. Ariz. 1991) (same), *with United States v. Exxonmobil Corp.*, 264 F.R.D. 242, 246-48 (N.D. W. Va. 2010) (holding interest

legally sufficient); *United States v. Acton Corp.*, 131 F.R.D. 431, 433-34 (D.N.J. 1990) (same).

**[3]** We join the Eighth and Tenth Circuits in holding that non-settling PRPs have a significant protectable interest in litigation between the government and would-be settling PRPs. As non-settling PRPs, Applicants in this case are potentially liable for response costs under § 107(a) of CERCLA, 42 U.S.C. § 9607(a). Section 113(f)(2) provides that approval of a consent decree will cut off their contribution rights under § 113(f)(1). The proposed consent decree in the EPA's suit against the Group of 10 will therefore directly affect Applicants' interest in maintaining their right to contribution. *See Union Elec.*, 64 F.3d at 1166-67. Further, because non-settling PRPs may be held liable for the entire amount of response costs minus the amount paid in a settlement, Applicants have an obvious interest in the amount of any judicially-approved settlement. *See* CERLCA § 107(a), 42 U.S.C. § 9607(a); CERCLA § 122(h)(4), 42 U.S.C. § 9622(h)(4). The larger the settlement amount, the smaller the remaining amount for which the non-settling PRPs may be liable.

Appellees contend that § 113(f)(1) creates only a contingent or speculative interest in non-settling PRPs, and that Applicants' interest is therefore not significantly protectable. Some district courts have agreed. For example, the district court in *United States v. Vasi* determined that:

> Beazer's [the applicant's] potential right to contribution does not constitute a direct, substantial, legally protectable interest in the *Vasi* case. If anything, Beazer has a remote economic interest . . . .

> Beazer's right to contribution is at present a contingency, and not something which it owns. Beazer has not been declared a responsible party, nor have the *Vasi* defendants been found responsible parties.

Beazer cannot demonstrate that a substantial interest will be impaired by the *Vasi* proceedings.

Nos. 5:90-cv-1167, 5:90-cv-1168, 1991 WL 557609, at *5 (N.D. Ohio Mar. 6, 1991); *see also Motorola*, 139 F.R.D. at 146 (offering similar reasoning).

**[4]** We disagree. Although only parties found liable can be made to pay a contribution claim, the statute explicitly provides an interest in such a claim to any "liable or potentially liable" person. CERCLA § 113(f)(1). Moreover, the statute provides that the interest arises during or following a civil action under §§ 106 or 107 of CERCLA. Therefore, under the statute, a non-settling PRP need not have first been found liable in order for the contribution interest to arise. *See Union Elec.*, 64 F.3d at 1167 ("[N]o finding of liability is required, nor assessment of excessive liability, before the contribution interest arises.").

**[5]** These interests are sufficient to satisfy the requirements of Rule 24(a)(2) and § 113(i) that the interest be "significantly protectable." CERCLA provides a contribution right and requires that consent decrees be substantively fair. *See* CERCLA § 113(f)(1); *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 743 (9th Cir. 1995) (noting proposed consent decrees must be "fair, reasonable and consistent with the objectives of CERCLA"). Thus, Applicants' interests in contribution and in a fair and reasonable allocation of liability are "protected under some law." *Lockyer*, 450 F.3d at 440-41. There is a "relationship" between Applicants' "legally protected interest and the plaintiff's claims," *id.*, because the resolution of appellees' claims will have a direct effect on Applicants. *See Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).

Appellees would have us rely on arguments based on policy and legislative intent as a justification for concluding that non-settling PRPs' interests are not sufficient to support inter-

vention. Some district courts have been persuaded by policy arguments against intervention, based upon the desirability of giving the EPA leverage to encourage early settlement. These arguments include the desire "to ensure rapid and thorough cleanup of toxic waste sites," *Acorn*, 221 F.R.D. at 536; to avoid "the expenditure of limited resources on protracted litigation," *id*. at 537; and "to encourage early settlement by parties potentially responsible for cleanup costs," *Motorola*, 139 F.R.D. at 145. These courts believe that allowing intervention would be inconsistent with "CERCLA's joint and several liability scheme and its policy favoring early settlements." *Id.* A non-settling PRP "could refuse to engage in meaningful settlement negotiations" until other parties reached a settlement, and only then seek to intervene, which could "cause delays in implementation of the clean up . . . and effectively thwart the settlement process." *Vasi*, 1991 WL 557609, at *4.

There are, however, countervailing policy arguments in favor of treating all PRPs fairly, an interest that is itself embodied in the statutory scheme. Section 113(f)(1) confers a right to contribution on a non-settling PRP. Allowing non-settling PRPs to intervene in CERCLA litigation to represent their own interests helps "ensure that the costs of [hazardous waste site] cleanup efforts [are] borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry. Co. v. United States*, 129 S. Ct. 1870, 1874 (2009). Further, even if intervention is allowed, the approval of a settlement will still cut off the non-settling PRPs contribution interest, thus keeping intact "the intent of § 113(f)(2) to induce prompt settlement." *Union Elec.*, 64 F.3d at 1166.

**[6]** But we do not rely on arguments based on policy. We agree with the Eighth and Tenth Circuits that § 113(f) and 113(i) of CERCLA are unambiguous. *See Albert*, 585 F.3d at 1394-96; *Union Elec.*, 64 F.3d at 1158 & n.1, 1165-66 (citing *Hazardous Waste Treatment Council v. South Carolina (In re Sierra Club)*, 945 F.2d 776, 779 (4th Cir. 1991)). Section 113(f) confers a right of contribution. Like Rule 24(a)(2),

§ 113(i) confers a right to intervene on "any person" who "claims an interest" in the litigation, should the disposition of the action "impair or impede" that interest. Section 113(i) contains no restriction on intervention by non-settling PRPs. *See Union Elec.*, 64 F.3d at 1165. Nor does the right of intervention in § 113(i) need to be restricted in order to give effect to the contribution provisions of § 113(f). Indeed, precisely because § 113(f)(2) cuts off the contribution right of non-settling PRPs, § 113(i) gives them the right to intervene upon timely application. We therefore hold that Applicants have significant protectable interests that support intervention as of right.

### 3.    Impairment of Interests

**[7]** Under Rule 24(a)(2) and § 113(i), an applicant must be situated such that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interests.

**[8]** This requirement need not detain us long. It follows from our discussion of Applicants' significant protectable interests that disposition of this action may impair or impede those interests. It is undisputed that "[d]isposition of the present litigation could bar or reduce the monetary value of the contribution claims of the prospective intervenors against the settling PRPs." *Union Elec.*, 64 F.3d at 1167. Non-settling PRPs may be held jointly and severally liable for the entire amount of response costs minus the amount of the settlement. CERCLA §§ 107(a) & 122(h)(4). Thus, as a practical matter, it is highly likely that the amount that the Group of 10 pays in settlement will affect the amount the non-settling PRPs ultimately have to pay, either in settlement or after trial, to satisfy their own liability for response costs.

Proposed intervenors' interests "might not be *impaired* if they have 'other means' to protect them," even if the lawsuit would affect those interests. *Lockyer*, 450 F.3d at 442 (quoting *Alisal*, 370 F.3d at 921) (emphasis in original). But Appli-

cants have no such "other means" in this case. Appellees contend that Applicants have already protected their interests through participation in the *SEMOU Cases*, and that intervention here would replicate the process already made available in those cases. Participation in the *SEMOU Cases*, however, has not provided Applicants with a direct opportunity to challenge the fairness of the settlements prior to their entry as a consent decree.

Appellees also contend that CERCLA's notice and comment procedure provided Applicants with an "other means" by which to protect their interests. Notice and comment procedures do provide non-settling PRPs some degree of protection against an unfair consent decree. Some district courts have relied on the existence of these procedures to buttress a determination that intervention as of right is not available. *See, e.g.*, *Acorn*, 221 F.R.D. at 538-39; *United States v. Mid-State Disposal, Inc.*, 131 F.R.D. 573, 577 (W.D. Wis. 1990). We disagree with those courts. Once a consent decree has been negotiated and agreed upon, the interests of the government and would-be settling PRPs are essentially aligned and are adverse to those of non-settling PRPs who oppose entry of the decree. In the case now before us, Applicants had been involved in the settlement process and had made their views known to the government. The EPA and the Group of 10 had already agreed to the terms of the proposed consent decree, despite Applicants' opposition, before comments were sought. It is unrealistic to expect the government to abandon or substantially modify the proposed consent decree in response to Applicants' comments at this late stage of the process.

[9] The statutory scheme reflects a Congressional intent that the interests of entities other than the government and settling PRPs be considered as part of the settlement process. When a settlement is submitted for judicial approval, a court is required to evaluate whether a proposed consent decree is "fair, reasonable and consistent with the objectives of CERCLA" before approving it. *Montrose*, 50 F.3d at 743. A court

must consider the substantive fairness of the consent decree to non-settling PRPs by assessing whether liability has been roughly apportioned based upon "some acceptable measure of comparative fault." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 87 (1st Cir. 1990); *see Montrose*, 50 F.3d at 746. Applicants have the right to participate in this process and to have their interests considered by the court. We conclude that the notice and comment procedure does not provide Applicants with sufficient "other means" by which to protect their interests, *see Lockyer*, 450 F.3d at 442, and that those interests will be impaired if Applicants are not afforded the right of intervention.

### 4.   Adequacy of Representation

"This Court considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

**[10]** The parties to this appeal do not contend that the existing parties adequately represent Applicants' interests. Indeed, the would-be settling PRPs' interests are directly opposed to those of the Applicants. The would-be settling PRPs wish to limit their share of liability and to bar the non-settling PRPs from obtaining contribution. The EPA, having invested substantially in the settlement negotiations, has an interest in securing approval of the decree. These interests are directly opposed to those of the non-settling PRPs, who seek to challenge the proposed decree. "Because of this difference in interest, the EPA can hardly be expected to litigate with the interests of the non-settling PRPs uppermost in its mind." *Union Elec.*, 64 F.3d at 1170.

**[11]** Under Rule 24(a)(2), Applicants bear the burden of showing that their interests are not adequately represented by the existing parties. Under § 113(i), the government bears the burden of showing the non-settling PRPs' interests are adequately represented. Under either standard, we conclude that the interests of the non-settling PRPs are not adequately represented by the existing parties.

## Conclusion

**[12]** For the foregoing reasons, we hold that Applicants have a right to intervene under Rule 24(a)(2) and § 113(i) of CERCLA to protect their interests in contribution and in the fairness of the proposed consent decree. We therefore reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**